IN THE COURT OF COMMON PLEAS OF ALLEGHENY COUNTY, PENNSYLVANIA

SOUTHERSBY DEVELOPMENT CORP.,

    Plaintiff,

    vs.

BOROUGH OF JEFFERSON HILLS, and
WILLIAM L. MCVICKER, in his individual
and official capacity,

    Defendants.

CIVIL DIVISION

No. G.D. 08-019286

Code No. __

**COMPLAINT IN CIVIL ACTION**

Filed on Behalf of Plaintiff, Southersby
Development Corp.

Counsel of Record for this Party:

PAUL R. ROBINSON, ESQUIRE
PA I.D. No. 65581

JAMES D. MILLER, ESQUIRE
PA I.D. No. 209679

MEYER, DARRAGH, BUCKLER,
BEBENEK & ECK, P.L.L.C.
U.S. Steel Tower, Suite 4850
600 Grant Street
Pittsburgh, PA 15219-6194
Telephone: (412) 261-6600
Fax: (412) 471-2754
Email: probinson@mdbbe.com
       jmiller@mdbbe.com

**JURY TRIAL DEMANDED**

FILED
09 JAN 22 AM 11:17
DEPT OF COURT RECORDS
CIVIL/FAMILY DIVISION
ALLEGHENY COUNTY PA

P0863521.1

IN THE COURT OF COMMON PLEAS OF ALLEGHENY COUNTY, PENNSYLVANIA

| | |
|---|---|
| SOUTHERSBY DEVELOPMENT CORP., | CIVIL DIVISION |
| Plaintiff, | No. G.D. 08-019286 |
| vs. | |
| BOROUGH OF JEFFERSON HILLS and WILLIAM L. MCVICKER, in his individual and official capacity, | |
| Defendant. | |

### NOTICE TO DEFEND

YOU HAVE BEEN SUED IN COURT.  If you wish to defend against the claims set forth in the following pages, you must take action within twenty (20) days after this complaint and notice are served, by entering a written appearance personally or by attorney and filing in writing with the court your defenses or objections to the claims set forth against you.  You are warned that if you fail to do so the case may proceed without you and a judgment may be entered against you by the court without further notice for any money claimed in the complaint and for any claim or relief requested by the plaintiff.  You may lose money or property or other rights important to you.

YOU SHOULD TAKE THIS PAPER TO YOUR LAWYER AT ONCE.  IF YOU DO NOT HAVE A LAWYER, GO TO OR TELEPHONE THE OFFICE SET FORTH BELOW. THIS OFFICE CAN PROVIDE YOU WITH INFORMATION ABOUT HIRING A LAWYER.

IF YOU CANNOT AFFORD TO HIRE A LAWYER, THIS OFFICE MAY BE ABLE TO PROVIDE YOU WITH INFORMATION ABOUT AGENCIES THAT MAY OFFER LEGAL SERVICES TO ELIGIBLE PERSONS AT A REDUCED FEE OR NO FEE.

LAWYER REFERRAL SERVICE
The Allegheny County Bar Association
11TH Floor Koppers Building
436 Seventh Avenue
Pittsburgh, Pennsylvania 15219
Telephone:  (412) 261-5555

PLEASE SERVE ALL PAPERS ON:

PAUL R. ROBINSON, ESQUIRE
MEYER, DARRAGH, BUCKLER, BEBENEK & ECK, P.L.L.C.
U.S. STEEL TOWER, SUITE 4850
600 GRANT STREET
PITTSBURGH, PA  15219

P0863521.1

IN THE COURT OF COMMON PLEAS OF ALLEGHENY COUNTY, PENNSYLVANIA

| | |
|---|---|
| SOUTHERSBY DEVELOPMENT CORP., | CIVIL DIVISION |
| Plaintiff, | |
| vs. | No. G.D. 08-019286 |
| BOROUGH OF JEFFERSON HILLS and WILLIAM L. MCVICKER, in his individual and official capacity, | |
| Defendant. | |

## COMPLAINT IN CIVIL ACTION

AND NOW, comes the plaintiff, SOUTHERSBY DEVELOPMENT CORP., by and through its attorneys, MEYER, DARRAGH, BUCKLER, BEBENEK, & ECK, P.L.L.C., filing its complaint in civil action averring as follows:

### THE PARTIES

1.      Plaintiff, Southersby Development Corp. (hereinafter "plaintiff") is a Pennsylvania corporation duly organized and existing under the laws of the Commonwealth of Pennsylvania with a principal place of business located at 245 Summerlawn Drive, Sewickley, Pennsylvania 15143.

2.      Defendant Borough of Jefferson Hills (hereinafter "Jefferson Hills" or "Borough") is a municipal corporation organized and existing under the laws of the Commonwealth of Pennsylvania.

1

3.     Defendant William L. McVicker, Sr. (hereinafter "McVicker") is an individual, believed to reside at 113 Garden Drive, Apartment E, Pittsburgh, Pennsylvania 15236.

## FACTUAL BACKGROUND

4.     McVicker  was employed by defendant Jefferson Hills in a official capacity as public works director, public service coordinator, zoning officer, building code inspector, road department director, fire marshal, and possibly other unknown positions whereby he had the duty to interpret, apply and enforce Borough ordinances and code, and create and enforce Borough policy.

5.     Upon information and belief, McVicker was dismissed from his position as an employee and official of Jefferson Hills in or around September 2008.

6.     Plaintiff owns property within the corporate boundaries of Jefferson Hills approved for residential development and referred to as Patriot Pointe, and includes subdivisions referred to as Patriot Pointe Phase I and II (collectively referred to as "Patriot Pointe").

7.     Plaintiff purchased and developed the property encompassed by Patriot Pointe for the purpose of selling the individual lots of the development for profit.

8.     On or about June 14, 2004, Jefferson Hills and plaintiff entered into a contract titled Developer's Agreement for the planned development of Patriot Pointe Phase

P0863521.1

2

I. (A true and correct copy of the June 14, 2004 developer's agreement is attached hereto as Exhibit "A.").

9. On or about July 27, 2005, Jefferson Hills and plaintiff entered into a contract titled Developer's Agreement for the planned development of Patriot Pointe Phase II. (A true and correct copy of the July 27, 2005 developer's agreement is attached hereto as Exhibit "B.").

10. At all times relevant hereto, Jefferson Hills acted or failed to act by and through its agents, servants and employees within the course and scope of their agency or employment.

## COUNT I
## FOURTEEN AMENDMENT - DENIAL OF EQUAL PROTECTION
### Southersby Development Corp. v. Borough of Jefferson Hills
### and William L. McVicker

11. Paragraphs 1 through 10 of plaintiff's Complaint are incorporated by reference herein as though fully set forth at length.

12. 42 U.S.C. § 1983 provides that, "Every person who, under color of any statute, ordinance, regulation, custom, or usage of any State or Territory or the District of Columbia, subjects or causes to be subjected, any citizen of the United States or other person with the jurisdiction thereof to the deprivation of any rights, privileges, or immunity secured by the Constitution and laws shall be liable to the party injured in an action at law,

suit in equity, or other proper proceeding for redress."

13. Pursuant to the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution, no state shall "[d]eny to any person within its jurisdiction the equal protection of the laws."

14. Residential property developments within the boundaries of Jefferson Hills, referred to as Chamberlain Ridge, Scenery Hill Phase III, Woods of Jefferson Hills Phase III and Castor Farms were developed at or around the same time as Patriot Pointe, and are similarly situated to Patriot Pointe.

15. Upon information and belief, Chamberlain Ridge, Scenery Hill Phase III, Woods of Jefferson Hills Phase III and Castor Farms were developed by companies owned and/or operated by residents of Jefferson Hills.

16. Jefferson Hills, by and through its officials, employees and agents, and McVicker, in his individual and various official capacities, under color of state law, have intentionally, and/or with reckless indifference to plaintiff's federally protected rights, enforced Borough ordinances and processes and state law against the plaintiff in a selective manner that is wholly arbitrary, irrational, and capricious such that plaintiff was treated differently, without a legitimate government purpose, from other similarly situated individuals and land developers, including those developers specifically described herein.

17.   The unequal and discriminatory treatment of the plaintiff by the defendants, as described herein, includes, but is not limited to, the following particulars:

a.   Defendants selectively applied borough road specifications and standards against plaintiff in installing the infrastructure of Patriot Pointe that were not applied to the Chamberlain Ridge, Scenery Hill Phase III, Woods of Jefferson Hills Phase III or Castor Farm developments before acceptance of the roads by Jefferson Hills;

b.   Plaintiff was subjected to stringent inspection by Jefferson Hills and McVicker, and required to pay for engineering activities and charges for Patriot Pointe that were not required of other similarly situated individuals and land developers, including the developers of Chamberlain Ridge, Scenery Hill Phase III, Woods of Jefferson Hills Phase III and Castor Farms;

c.   Plaintiff was required to conduct and pay for density testing and core sampling during road installation, which were not required of other similarly situated land developers, including the developers of Chamberlain Ridge, Scenery Hill Phase III, Woods of Jefferson Hills Phase III and Castor Farms;

d.   Defendants conditioned acceptance of Patriot Pointe's master plan on the installation of storm sewers for on-lot water collection in the front of the building lots of Patriot Point Phase II, including low-side lots, which made it necessary to install storm inlets with a height of approximately 10 to 15 feet and use a trench box during excavation, despite plaintiff's engineer's demonstration that such storm sewers would be more appropriately placed in the rear of low-side lots. Yet, other similarly situated developers, including the developers of Chamberlain Ridge and Scenery Hill Phase III, were permitted to install storm swales in the rear of low-side lots; thereby allowing storm sewer inlet placements at a height of only 4 to 5 feet, or were not required to install any storm sewers whatsoever for on-lot water collection;

e.   Plaintiff was charged excessive fees for inspection, engineering activities, municipal legal fees, density testing, core sampling, punch list, and bond issues in relation to the dedication and acceptance of the infrastructure of Patriot Pointe.   Yet, other similarly situated developers, including the developers of Chamberlain Ridge, Scenery Hill Phase III, Woods of Jefferson Hills Phase III and Castor Farms were not charged any fees or were charged fees substantially less than those charged to plaintiff;

P0863521.1                                    5

f.  Defendants required the plaintiff go through the process of dedicating an access road called Independence Drive a second time even though Jefferson Hills had already accepted the dedication of Independence Drive and plaintiff had satisfied all obligations for dedication and acceptance;

g.  Defendants attempted to arbitrarily revoke a sign permit issued to the plaintiff for placement of a sign at the entrance of an access road to Patriot Point Phase II called Independence Drive under the premise that the entrance signs were located in a private right-of-way. Defendants knew that the entrance sign was properly located in a public right-of-way and that they did not have cause to revoke the sign permit, and no such action was taken against other similarly situated individuals or developers, including Jefferson Estates who's entrance signs are also located within a similar right-of-way;

h.  Defendants, under false pretenses and with the intent to cause financial harm to the plaintiff, unlawfully and arbitrarily attempted to draw on the funds of plaintiff's bond for completion of an access road named Independence Drive to Patriot Point Phase II in a manner and procedure not applied to other similarly situated individuals and land developers, and knowing they did not have proper cause to do so;

i.  McVicker, with the intent to cause financial harm to the plaintiff, wrongfully interfered with plaintiff's business and contractual relationship with NVR, Inc. (d/b/a Ryan Homes) in performing construction at Patriot Pointe by threatening to withdraw Ryan Homes' building permits, not issue or delay the issuance of building permits and/or issue stop work orders if plaintiff was allowed to work on NVR, Inc.'s home sites; and

j.  Upon information and belief, McVicker made frivolous complaints against plaintiff to the Allegheny Conservation District, an agent for the Department of Environmental Protection Agency, causing plaintiff to undergo unnecessary inspections; however, no complaints were made or inspections conducted against similarly situated developers, including Castor Farms.

18.  Defendants' unequal and unlawful actions against plaintiff were motivated by bias against the plaintiff as a non-resident developer and because plaintiff contested Jefferson Hill's legal right to charge and collect legal escrow fees and storm sewer fees

from plaintiff for the development of Patriot Pointe.

19.    Defendants' unequal and unlawful actions against plaintiff were also motivated by ill will, personal animus, malice, an intent to harass or other improper motives held by McVicker and other agents of Jefferson Hills due to personal relationships with Jefferson Hills residents who opposed activities of the plaintiff relative to Patriot Pointe, sought to undermine the progress of Patriot Pointe, and/or sought financial gain from the failure or foreclosure of Patriot Pointe.

20.    Upon information and belief, it was a policy, practice and/or custom of Jefferson Hills to allow McVicker and other officials and/or agents to selectively and arbitrarily enforce state law and borough ordinances and processes and charge unequal fees without adequate guidelines or supervision, or punishment upon notice of unreasonable activities, which was the direct cause of plaintiff's injuries and damages.

21.    McVicker is a policymaker of Jefferson Hills whereby his selective, arbitrary, irrational and capricious enforcement of borough ordinances and processes constitutes a policy, practice and/or custom of Jefferson Hills, which was the direct cause of plaintiff's injuries and damages..

22.    By acting in an arbitrary, irrational and capricious manner relative to the plaintiff, and doing so intentionally and/or with reckless indifference to plaintiff's federally protected rights, Jefferson Hills and McVicker have denied the plaintiff its right to equal

P0863521.1                                    7

protection of the laws under the Fourteenth Amendment of the United States Constitution.

23.    As a direct result of the improper and unlawful acts of Jefferson Hills and McVicker, the plaintiff has suffered damages, including, but not limited to, substantial loss of profit and revenues, loss of good will, and increased expenses from overhead, development loan interest, fees, labor, supplies and material costs, and other costs, including attorney fees and costs, that it would not have incurred if not for the unlawful and improper acts of the defendants.

24.    McVicker's arbitrary, irrational and capricious actions relative to the plaintiff were intentional, malicious, and/or committed with reckless indifference to plaintiff's federally protected rights whereby an award of punitive damages against McVicker, in his individual capacity, is appropriate.

25.    Pursuant to 42 U.S.C. § 1988(b), plaintiff asserts its right to recover reasonable attorney fees and costs from the defendants in the event it prevails on its 42 U.S.C. § 1983 claim against defendants.

WHEREFORE, plaintiff claims damages from defendant in an amount in excess of $ 25,000, exclusive of interest and costs.

P0863521.1

8

## COUNT II
## FOURTEENTH AMENDMENT - DENIAL OF SUBSTANTIVE DUE PROCESS
### Southersby Development Corp. v. Borough of Jefferson Hills
### and William L. McVicker

26.     Paragraphs 1 through 25 of plaintiff's Complaint are incorporated by reference herein as though fully set forth at length.

27.     The arbitrary, irrational and discriminatory actions of Jefferson Hills and McVicker, in his individual and official capacities, as described herein, have denied the plaintiff its right to due process of law by wrongfully depriving the plaintiff of its protected property interest in the ownership and development of Patriot Pointe.

28.     The defendants had no legitimate government purpose for undertaking the actions as described herein.

29.     The defendants had no legitimate government purpose for the selective application and enforcement of borough ordinances, processes, standards and fees, or other laws as described herein.

30.     By acting in an arbitrary, irrational and capricious manner relative to the plaintiff, and doing so intentionally and/or with reckless indifference to plaintiff's federally protected rights, Jefferson Hills and McVicker have denied the plaintiff its right to substantive due process under the Fourteenth Amendment of the United States Constitution.

P0863521.1                                    9

31.    Defendants' arbitrary and irrational actions are egregious and involve an abuse of official power that shocks the conscience.

32.    As a direct result of the improper and unlawful acts of Jefferson Hills and McVicker, the plaintiff has suffered damages, including, but not limited to, substantial loss of profit and revenue, loss of good will, and increased expenses from overhead, development loan interest, fees, labor, supplies and material costs, and other costs, including attorney fees and costs, that it would not have incurred if not for the unlawful and improper acts of the defendants.

33.    McVicker's arbitrary, irrational and capricious actions relative to the plaintiff were intentional, malicious, and/or committed with reckless indifference to plaintiff's federally protected rights whereby an award of punitive damages against McVicker, in his individual capacity, is appropriate.

34.    Pursuant to 42 U.S.C. § 1988(b), plaintiff asserts its right to recover reasonable attorney fees and costs from the defendants in the event it prevails on its 42 U.S.C. § 1983 claim against defendants.

WHEREFORE, plaintiff claims damages from defendant in an amount in excess of $ 25,000, exclusive of interest and costs.

## COUNT III
## NEGLIGENCE
### Southersby Development Corp. v. Borough of Jefferson Hills

35.    Paragraphs 1 through 34 of plaintiff's complaint are incorporated by reference herein as though fully set forth at length.

36.    Jefferson Hills planned, constructed and installed a sewer system within its corporate boundaries, a portion of which was constructed across a tributary to a water course commonly known as Lick Run and adjacent to lots 209, 210, 211 and 212 of the Patriot Point Phase II subdivision.

37.    It was and is the duty of Jefferson Hills to use reasonable care and properly maintain the sewer line and the water course which it affects.

38.    Jefferson Hills breached its duty when it carelessly and negligently maintained and/or failed to maintain said sewer line and water course, creating a build-up of sediment or artificial bar and obstructed the natural flow of water in its Borough-owned passageway, causing the unnatural erosion of the soil on the stream banks of the tributary and hill slope adjacent to the tributary consisting of plaintiff's property.

39.    During periods of increased water flow, the sewer line and resulting artificial bar obstructed the natural flow of water and diverted the water onto the plaintiff's adjacent property thereby undermining the stability of plaintiff's property and resulting in an unstable

landslide-prone condition.

40.     Jefferson Hills knew or reasonably should have known of the existence of the aforesaid dangerous condition caused by its sewer line and the lack of maintenance thereof, which resulted in the damage to plaintiff's property, and should have taken measures to protect against the dangerous condition or otherwise remedy the condition.

41.     In September 2006, Jefferson Hills' engineer(s) informed and warned Jefferson Hills of the erosion and probability of future landslides, and of the potential and actual harm that the condition has caused and would cause in the future.

42.     Jefferson Hills refused and failed to repair the unnatural erosion of the plaintiff's property caused by the sewer and its maintenance or lack thereof as described herein.

43.     As a result of the soil erosion, which was proximately caused by Jefferson Hills' negligent construction, maintenance, and/or lack of maintenance of the sewer and water course, plaintiff sustained substantial property damage.

44.     As a result of the dangerous landslide condition caused by the soil erosion, which was proximately caused by Jefferson Hills' negligent construction, maintenance, and/or lack of maintenance of the sewer and water course, plaintiff has been unable to sell the property adjacent to the soil erosion and slide-prone area due to its unsafe nature

P0863521.1                                        12

thereby resulting in substantial financial loss.

45. As a proximate result of Jefferson Hills' negligence, plaintiff has suffered damages, including, but not limited to, loss of profit and revenues, diminution in property value, and increased costs and fees, including the cost to repair the damage to plaintiff's property and attorney fees and costs.

46. It was reasonably foreseeable that the dangerous condition created by Jefferson Hills' negligent construction, maintenance, and/or lack of maintenance of the sewer and water course would result in the property damage and financial harm sustained by plaintiff.

47. On November 5, 2007, formal written notice of plaintiff's claim was provided to Jefferson Hills, but Jefferson Hills had constructive notice of all facts of the claim required by 42 Pa.C.S. § 5522(a)(1) as early as September 2006 when borough engineers notified Jefferson Hills of the erosion damage caused by the sewer line. (A true and correct copy of the written notice is attached hereto as Exhibit "C.").

WHEREFORE, plaintiff claims damages from Jefferson Hills in an amount in excess of $ 25,000, exclusive of interest and costs.

P0863521.1                    13

## COUNT IV
## BREACH OF CONTRACT
### Southersby Development Corp. v. Borough of Jefferson Hills

48.     Paragraphs 1 through 47 of plaintiff's Complaint are incorporated by reference herein as though fully set forth at length.

49.     Jefferson Hills and plaintiff entered into contracts for the development of property located within the boundaries of Jefferson Hills referred to as Patriot Pointe Phase I and II on June 14, 2004 and July 27, 2005, respectively.  (See Exhibits A and B, collectively referred to as "Development Agreements").

50.     Pursuant to the Development Agreements, Jefferson Hills implicitly covenanted to perform in good faith and deal fairly with the plaintiff during performance of the Development Agreements.

51.     Jefferson Hills breached the Development Agreements by acting in bad faith and undertaking the actions as described herein.

52.     As a proximate result of Jefferson Hills' breach, plaintiff's progress in developing Patriot Pointe was severely hampered, the sale of lots in Patriot Pointe was substantially delayed, and plaintiff's business relationships with NVR, Inc. and other business partners and service providers were irreparably harmed.

53.     As a proximate result of Jefferson Hills' breach, plaintiff has incurred damages including, but not limited to, loss of profit and revenues, diminution in property value, loss of good will, and increased expenses for overhead, development loan interest, fees, labor, supplies and material costs, and other costs, including attorney fees and costs, that it would not have incurred if not for Jefferson Hills unlawful breach of the Development Agreements.

WHEREFORE, plaintiff claims damages from defendant in an amount in excess of $ 25,000, exclusive of interest and costs.

**JURY TRIAL DEMANDED**

Respectfully submitted,

MEYER, DARRAGH, BUCKLER,
BEBENEK & ECK, P.L.L.C.

By: _____
PAUL R. ROBINSON, ESQUIRE
JAMES D. MILLER, ESQUIRE

Counsel for plaintiff, Southersby
Development Corp.

P0863521.1                              15

6/15/04 *ce & Gabel*
*Ames*
*original to Tim Murphy*

## DEVELOPER'S AGREEMENT

MADE AND ENTERED into this 14th day of June,
2004, by and between: SOUTHERSBY DEVELOPMENT CORP., a
Pennsylvania Corporation, hereinafter called "Developer,"

AND

THE BOROUGH OF JEFFERSON HILLS, a municipal corporation of
the Commonwealth of Pennsylvania, hereinafter called "Borough."

WHEREAS, the Developer has laid out or is desirous of laying
out certain unimproved land owned by the Developer, or of which
the Developer is the equitable owner, as the same is defined by
the Pennsylvania Municipalities Planning Act, and which lands are
situate in the Borough of Jefferson Hills, Allegheny County,
Pennsylvania, in a proposed plan of lots or development known as
"PATRIOT POINTE PHASE I," hereinafter the "Plan;" and

WHEREAS, the Developer is desirous of having the Plan
approved by the Borough or, if the same shall already have been
approved, of entering into an agreement with the Borough relating
to the development, dedication and acceptance of the Plan; and

WHEREAS, the Developer is desirous of obtaining building
permits for construction of homes, buildings or other structures
upon the said premises; and

WHEREAS, the Borough requires that certain public and
private improvements, as more specifically described in the
Development Plans (the "Plans") and in attached Exhibits A, B,

1



C and D hereto (hereinafter called "Improvements"), be installed and constructed in the said subdivision or development, including, but not limited to, streets, roadways, sanitary sewers, storm sewers, storm water detention system, grading, walkways, curbs, water mains, storm drains, erosion and sedimentation control, utility trenching, grouting, and that proper easements be established for maintenance of the same, and that security be posted by the Developer to guarantee the prompt and proper installation and construction of the said Improvements contemplated thereon, and of the maintenance of the same following construction; and

WHEREAS, following the completion of the Plan and the construction of all the Improvements as aforesaid, the Borough has indicated its willingness to accept the Plan and those dedicated streets and public sewers constructed thereon and as shown on the Plan.

NOW, THEREFORE, in consideration of the foregoing promises, and in further consideration of the mutual promises hereinafter contained, the parties hereto, intending to be legally bound, do agree as follows:

1. The Developer has provided development plans (the "Plans") to the Borough for its approval, which Plans were approved by the Planning Commission and are specifically designated as Order No. 03-77000, Sheets No. 1 through 11, inclusive, and the Plan for Recording, Sheets 1 through 4,

2

inclusive, prepared by J.R. Gales & Associates. Said Plans have been approved subject to the conditions and requirements set forth by the Council of the Borough of Jefferson Hills, including, but not limited to, the conditions and requirements more fully described on attached Exhibit A hereto, which is the Final Plan Review for the Plan submitted by the Borough Engineer dated February 5, 2004[1]; the conditions and requirements more fully described on attached Exhibit B hereto, which is a letter submitted to the Borough of Jefferson Hills by the Borough of Jefferson Hills Planning Commission dated February 25, 2004; the conditions and requirements more fully described on attached Exhibit C hereto, which is a letter submitted to the Borough Solicitor by the Borough Engineer dated March 26, 2004; and the conditions and requirements more fully described on attached Exhibit D hereto, which is a letter submitted to the Borough Solicitor by the Borough Engineer dated May 3, 2004, and sets forth the additional bonding requirement imposed upon the Developer for the full cost of improving the right-of-way through the Betler property to the Borough's specifications for a public street. The Developer does by these presents covenant and agree

---

[1]Exhibit "C" attached hereto, which is a letter submitted to the Borough Solicitor from the Borough Engineer dated March 26, 2004, sets forth that all of the conditions and requirements for the Developer to fulfill and satisfy on the Final Plan Review for the Plan submitted by the Borough Engineer dated February 5, 2004, and attached hereto as Exhibit "A," have been fulfilled by the Developer, and, accordingly, there is no further requirement for the Developer to fulfill said conditions imposed under this Developer's Agreement.

3

that it will abide by and observe all of the conditions and requirements set forth by the Council of the Borough of Jefferson Hills, the conditions and requirements set forth by the Planning Commission of the Borough of Jefferson Hills on attached Exhibit "B" hereto; and the conditions and requirements set forth by the Borough Engineer on attached Exhibits "A," "C," and "D" hereto during construction and shall accomplish all such conditions prior to acceptance of public improvements by the Borough. The Plans depict the Improvements to be constructed and the Conditions and Requirements pursuant to this Agreement and said Plans and Conditions and Requirements are specifically incorporated herein by reference.

2. The Developer covenants and agrees, as to buildings and dwellings erected by the Developer, to abide by all provisions of legislation of the Commonwealth of Pennsylvania, known as Act 222, which imposes installation and energy conservation and other standards upon the construction of buildings, dwellings and the like in the Commonwealth of Pennsylvania, and which further require the review and approval of the Department of Labor and Industry of the Commonwealth of Pennsylvania. Developer further covenants to abide by all provisions of Borough Ordinances and Regulations applicable to the Plan, except as specifically modified in this Agreement.

3. With respect to the installation of the Improvements, including, but not limited to, the streets, roadways, sanitary

4

sewers, storm sewers, storm water detention system, grading, walkways, curbs, storm drains, erosion and sedimentation control, utility trenching and grouting shown on the Plans, or as approved and required by the Council of the Borough of Jefferson Hills, the Developer shall post Completion Bonds as required by the Pennsylvania Municipalities Planning Code, Section 509, and Borough of Jefferson Hills Ordinance No. 685, Section 310, in the form of a surety bond or an irrevocable letter of credit, which shall be subject to the approval of the Borough Solicitor both in form and content, either of which shall be in an amount equal to 110% of the estimated cost of construction of the Improvements, written by a surety company authorized to do business in the Commonwealth of Pennsylvania, or any federal or state chartered lending institution authorized to issue irrevocable letters of credit, in an amount of FOUR HUNDRED SEVENTY-EIGHT THOUSAND FOUR HUNDRED EIGHTEEN AND SEVENTY-ONE HUNDREDTHS ($478,418.71) DOLLARS, as set forth in attached Exhibit "C" hereto, and in an amount of EIGHTY NINE THOUSAND SIX HUNDRED TWENTY-EIGHT ($89,628) DOLLARS, as set forth in attached Exhibit "D" hereto. The Completion Bonds shall name the Borough as obligee and shall guarantee the completion of the Improvements, including, but not limited to, streets, roadways, sanitary sewers, storm sewers, storm water detention system, grading, walkways, curbs, storm drains, erosion and sedimentation control, utility trenching, grouting and any other public improvements which may have been required by the Borough Engineer

5

or the Council of the Borough or set out in the Plans. Additionally, the Completion Bonds shall name the Borough as Obligee and shall guarantee the full cost of improving the right-of-way through the Betler property to the Borough's specifications for a public street, as set forth in Exhibit "D" attached hereto. The Completion Bonds shall require the completion of the Plan or the Improvements within the period of time required by the Borough and agreed upon by the Developer, which shall not exceed a period of two (2) years, measured from the date of the execution of this Agreement. In the event that the Developer shall fail to complete the Improvements required by this Agreement within the time period designated herein, or shall abandon the project for a period of one (1) year, then the Borough may, but shall not be obligated to, proceed to complete the Improvements and to collect the costs of such Improvements from the Developer and/or the bonding company. Should the cost of such Improvements be in excess of the amount of the Completion Bonds required hereunder, such excess shall nevertheless be collectible from the Developer or shall be filed as a lien against the property itself and enforced thereafter as all other obligations payable to the Borough. Any such action of the Borough in completing the Improvements shall not, in and of itself, constitute acceptance of or create an obligation on the part of the Borough to repair or maintain the same thereafter. The Developer does by these presents authorize and empower the

6

Borough to enter as a lien against the property an amount equal
to the amount which the Borough shall be required to expend to
complete the Improvements referred to herein. Nothing contained
herein, however, shall require the Borough to pursue any
particular remedies authorized herein, and the Borough may
proceed against the Completion Bonds provided for herein even
though no action shall be taken or other remedies pursued by the
Borough.

4.    In addition to the Completion Bonds insuring the
completion of Improvements, the Developer shall be required to
provide a Maintenance Bonds in an amount equal to 15% of the
actual cost of construction of the public improvements, written
by a surety company authorized to do business in the Commonwealth
of Pennsylvania and guaranteeing the repair or the cost of repair
of any defects resulting from improper workmanship or materials
or from any defects appearing in any of the public improvements
provided by the Developer hereunder. The Developer and the
Maintenance Bonds provided for these purposes shall covenant that
the Developer will repair any defects existing in the aforesaid
public improvements within eighteen (18) months after the
Borough's acceptance of all public improvements of the same and,
if the Developer does not repair such defects or correct any
conditions which do not comply with Borough specifications, the
Borough may, but shall not be obligated to, proceed to repair
such defects and collect the cost of such repair from the

Developer and/or the bonding company providing the Maintenance Bonds for these purposes. In the event that the cost of repair is in excess of the amount of the Maintenance Bonds provided for these purposes, such excess shall nevertheless be collectible from the Developer or shall be filed as a lien against the property itself and enforced thereafter as all other obligations payable to the Borough. The Developer does by these presents authorize and empower the Borough to enter as a lien against the property an amount equal to the amount which the Borough shall be required to expend to complete the repairs referred to herein. Nothing contained herein, however, shall require the Borough to pursue any particular remedies authorized herein, and the Borough may proceed against the Maintenance Bonds provided herein even though no action shall be taken or other remedies pursued by the Borough.

5. In lieu of Completion Bonds or Maintenance Bonds as required in paragraphs 3 and 4 of this Agreement, the Developer may post such security as may be approved under the provisions of the Pennsylvania Municipalities Planning Act provided, however, that in the event that the security to be posted by the Developer shall be in the form of a letter of credit or a cash deposit, an agreement acceptable to the Borough Council shall be duly executed and entered into by the Developer, the Borough and such other party as may be the source of the alternate security, and

provided such institution is authorized to conduct such business within the Commonwealth of Pennsylvania. The amount of the security to be posted shall be as set forth in Paragraphs 3 and 4 hereof, and which amount shall be determined by the submission to the Borough of a bona fide bid or bids from a contractor or contractors chosen by the financial institution posting the security. In the event that the completion of the project shall require more than one year from the date of the posting of the financial security, then the amount of such security may be increased by an additional ten (10%) percent for each year period beyond the first anniversary date.

6. As the work of installing the required Improvements proceeds to the satisfaction of Borough representatives, the Developer may request the Borough to release or to authorize the release from time to time of such portions of the Completion Bonds posted with the Borough which may be necessary for payment to the contractor or contractors performing the work. The Borough shall authorize the release by the bonding company or financial institution posting the security of such amounts as shall be certified by the Borough Engineer, and which shall fairly represent the value of the Improvements completed less, however, a retention of ten (10%) percent of the amount requested to be released, which shall be retained by the Borough until the Borough's acceptance of all Improvements.

9

7. The Developer further agrees to convey to the Borough appropriate easements for the construction and maintenance of, and dedication of, any public improvements which may be required by the Plans or by the Borough Engineer.

8. The Developer shall cause its contractors or sub-contractors to obtain and maintain liability and other insurance coverage and furnish certificates of insurance as required by the Borough.

9. In addition to the foregoing requirements, the Developer agrees that it will at its own expense:

a. comply in all respects with the provisions of the Borough's Subdivision and Grading Ordinances, and all amendments enacted thereto prior to the date of filing of the Plan Application; the development Plans and accompanying specifications; other applicable Borough Ordinances, Regulations, sewer agreements and standards of construction; and with the requirements and lawful directives of the Borough Engineer.

b. grade and pave roads as shown on the plans in accordance with the Borough's specifications as set forth in the Borough Subdivision Ordinance and all other applicable Ordinances and Regulations, and which provide that the paving shall not be done until all sanitary sewer laterals and utility service lines crossing such streets are installed and backfilled in accordance with Borough specifications. Additionally, the final top coat or wearing course of the paved roads shall be installed within

10

twelve (12) months of commencement of development, unless this deadline is extended by the Borough Engineer to enable the Developer to complete construction of all homes in the Plan. The final paving top coat or wearing course shall adhere to Borough typical drawing J-1, and no slag fill shall be permitted.

     c.   improve the right-of-way through the Betler property to the extent that it can be used as the only construction entrance for the Plan and that a Bond be posted for the Bond for the full cost of improving the right-of-way through Betler property to the Borough's specification for a public street.

     d.   install all utilities as required by this Agreement and the approved Plan, and for which the Developer has posted a Completion Bonds or other security approved by the Borough under this Agreement.

     e.   install the following utilities. prior to the sale of any lots in the plan and the issuance of any building permits by the Borough, and which utilities are not subject to a Completion Bonds or other security approved by the Borough under this Agreement:

          (1)   water;

          (2)   electric;

          (3)   gas, if available.

Further, the Borough shall not issue, or be required to issue, any building permits to the Developer until all such utilities

11

are installed by the Developer. In lieu of installing said utilities prior to the sale of any lots in the Plan, and at the option of the Developer, the Developer may choose to post financial security and/or enter into appropriate written agreements with the applicable utility companies to guarantee the installation of such utilities. In such instance, if the Developer provides written proof of the providing of such security to the applicable utility companies, or proof of written agreement with the applicable utility companies for the utilities to be installed by such utility companies, then the Borough shall issue building permits and allow the sale of lots prior to the installation of such utilities.

     f.   present to and obtain the approval of the Borough Engineer of a detailed plan showing the proposed sanitary sewers, storm sewers and grades of roads in said Plan prior to the commencement of construction and set grade stakes for all sanitary and storm sewer construction; and to present to and obtain approval of the Department of Environmental Protection of all Plans relating to sanitary and storm sewers and to obtain the approval of the County of Allegheny pursuant to the Allegheny County Storm Water Management Plan. In addition, the Developer shall submit the Plans for review and approval of all other governmental agencies having governmental or regulatory authority in the area to be developed.

12

g.   pay to the Borough any reasonable fees required
for entering into the Developer's Agreement and for tap-in fees
and other expenses as may be required by the Ordinances and
Regulations of the Borough.  The engineering and inspection
escrow fees are estimated at $14,352.56; mylar fee of $200; legal
escrow fees of $8,000.00 as set by the Council of the Borough of
Jefferson Hills[2]; monument escrow fees of $1,340; storm sewer
fees of $9,750[3]; and street sign fees of $475, all of which shall
be deposited with the Borough at the time of execution of this
Agreement.  Upon completion of the Improvements, and with
approval of the Borough Engineer, the Borough shall return to the
Developer any funds remaining unexpended out of the above-
mentioned escrow funds, without interest and all such expended
escrow funds shall be fully accounted for and documented with the
Developer.

h.   the Zoning Officer of the Borough of Jefferson
Hills, the Borough Engineer, and/or any other persons appointed
by the Borough for the enforcement of Borough Ordinances and
Regulations shall be notified by the Developer at least two (2)
business days in advance of commencement of construction and/or
excavation work taking place, and at least five (5) business days
in advance of commencement of paving work taking place, including
the time when such construction and/or excavation and/or paving



---

[2]See paragraph number 12 on page 18 of the Agreement.

[3]See paragraph number 12 on page 18 of the Agreement.

is to commence and the nature of the same and, additionally, the Developer shall provide materials, data, subcontracts and any other pertinent information to enable such representatives of the Borough to determine that the work is being conducted and progressing in accordance with Borough Ordinances and Regulations. Failure of the Developer to provide such information and materials, and to notify such Borough representatives of same in a timely manner, or to conduct work in accordance with Borough Ordinances and Regulations, shall be sufficient grounds for such Borough representatives to issue a cease and desist and/or stop work order against the Developer and/or any contractor or subcontractor performing such services, and the Developer agrees that such work shall cease and desist and stop until the requirements stated herein have been met. Further, the Developer shall have a pre-construction meeting with Borough representatives prior to commencing any construction, excavation or paving activities, and the Developer shall provide the Borough with six (6) sets of construction drawings at least one (1) week prior to such pre-construction meeting.

       i.   obtain written permission from adjourning property owners prior to draining or discharging any surface water, other than natural watercourses, on said adjoining properties.

       j.   connect any springs or other waters encountered during construction to the proposed storm sewers or, if necessary in the opinion of the Borough Engineer, sewer such springs or

14

other water to the proper outlet. Any construction of sewers shall be below grade and easement provided.

      k.   during construction, the Developer shall police the construction area daily, keeping the same free and clear of all rubbish, refuse, brush and debris; the Developer will accumulate said material and deposit the same in an area specified by the Borough representative until such time as the accumulated material is removed from the site by the Developer; and the Developer shall contain such material in such a manner so that it will not become wind-blown spread, or otherwise become a nuisance. All soil washed or carried onto public streets during construction shall be cleaned up each day by the Developer. Upon completion of the construction, the Developer shall remove from the site, and dispose of, all brush, rubbish and debris, leaving the Plan free and clear of the same.

      l.   remove all temporary buildings or structures within one (1) year after erection of the same.

      m.   construct all the Improvements in said Plan in accordance with the provisions of the approved development Plans and make no change in the location or grade of roads, nor any change in design or location of sanitary and storm sewers or water lines, or make any other change in the approved development Plans without the prior written approval of the Borough.

      n.   conform with all the recommendations outlined in a report from the United States Department of Agriculture Soil

15

Conservation Service and obtain the advice of a qualified Soils Engineer and/or Engineer to insure the proper installation of the fill areas; to construct and maintain the recommended drainage ditches and silt basin to prevent water and siltation damage to adjoining properties; and to keep, maintain and be responsible for the filled and graded areas for a period of eighteen (18) months. Reports shall be submitted to the Borough by the qualified Soils Engineer and/or Engineer at least once every four (4) weeks during construction.

o.    furnish the Borough "As Built" plans of the sanitary and storm sewers and storm water management facility verifying that the sewers and storm water management facility were built within the easements; plans and profiles of the roads, showing established center lines; and all other reasonable detail required by the Borough Engineer.

p.    furnish the Borough compaction tests for the pavement and fill slopes installed; tests verifying pavement depths; tests verifying watertight requirements for the sanitary sewers and storm sewers; and other reasonable testing results required by the Borough Engineer.

q.    furnish the Borough with a Homeowner's Association Agreement in accordance with the requirements of the approved Plan.

r.    comply with any and all requirements of the Commonwealth of Pennsylvania, Department of Environmental

16

Protection, including any administrative consent orders issued by the Department of Environmental Protection, as they relate to the Plan.

10.  All signs, including without limitation, stop signs and street name signs, shall be installed by the Borough.

11.  In consideration of the foregoing, the Borough agrees that it will, after the posting by the Developer of all Completion and Maintenance Bonds or other approved surety provided for in this Agreement, deliver a signed Plat for recording upon receipt of the executed Developer's Agreement and, based upon the approved Developer's Plan, formally adopt and accept for public purposes, the dedicated roads, sanitary sewers, storm sewers and other Improvements in the said Plan, but only after the same shall have recommended for acceptance by the Borough Engineer and accepted as completed to the satisfaction of the Borough, after the full and complete performance hereunder by the Developer to the satisfaction of the Borough and its Engineer.  Further, the Borough agrees, after approval of completion of the Developer's Plan as stated above, to promptly release to the Developer the Completion Bonds, or such security as shall have been provided in lieu thereof, and, following the appropriate period of maintenance as provided in paragraph 4, to release all Maintenance Bonds to the Developer and to discharge the same.  Nothing contained herein, however, shall obligate the Borough to issue any types of permits in the event that the

17

Department of Environmental Protection or some other regulatory or governmental agency shall limit or ban the issuance of permits such as tap-ins, module approvals, etc.

12.   The Developer disputes the Borough's legal right to charge, levy, assess and collect legal escrow fees of $8,000 as set by the Council of the Borough of Jefferson Hills and storm sewer fees of $9,750 as set forth in paragraph 9(g) of the within Agreement.   The parties will attempt to amicably resolve their disputes regarding same within sixty (60) days of execution of this Developer's Agreement.   If the parties are unable to amicably resolve their disputes concerning same within sixty (60) days of the execution date of this Agreement, the Developer shall have the right to file an action in a Court of competent jurisdiction concerning its right to challenge the Borough's charge, assessment, levy and collection of such fees and seek, inter alia, to have the Court resolve these disputed fees.   If the Developer prevails in such litigation, the Developer shall be entitled to a refund of any such fees paid under this Developer's Agreement to the Borough.   However, until such time as the Developer might prevail in such litigation, the Developer shall pay such legal escrow fees and storm sewer fees to the Borough as set forth in paragraph 9(g) of this Agreement.

13.  In the event that any term, condition, clause or provision of this Agreement shall be determined or declared to be void or invalid in law or otherwise, then only that term, condition, clause or provision shall be stricken from this

18

Agreement and in all other respects this Agreement shall be valid and continue in full force, effect and operation.

IN WITNESS WHEREOF, the parties hereto have set their hands and seals the day and year first above written.

ATTEST: *witness*,

*William L. McVicker*

SOUTHERSBY DEVELOPMENT CORP.
a Pennsylvania Corporation

BY: *[signature]* Pres.

ATTEST:

*Saundra J. Mortle*

Saundra J. Mortle
Secretary/Treasurer

BOROUGH OF JEFFERSON HILLS

*Kevin James McFarland*

Kevin McFarland
President of Council

19

THIS DOCUMENT HAS AN ARTIFICIAL WATERMARK PRINTED ON THE BACK. THE FRONT OF THE DOCUMENT HAS A MICRO-PRINT SIGNATURE LINE. ABSENCE OF THESE FEATURES WILL INDICATE A COPY

⟋Sky Bank

SALINEVILLE, OHIO
MEMBER FDIC

2601645

5-709/110

Remitter
Southersby Development Corp.
#1300317698

Date   June 10, 2004

Pay   **Jefferson Hills Borough**                    $ 8,000.00
to the order of

EXACTLY $ 8 0 0 0 AND 0 0 CTS                         Dollars

Legal Fee

Official Check                          Drawer Sky Bank

ISSUED BY: TRAVELERS EXPRESS COMPANY, INC.
P.O. BOX 9476, MINNEAPOLIS, MN 55480
DRAWEE: BOSTON SAFE DEPOSIT AND TRUST COMPANY
BOSTON, MASSACHUSETTS

*Sandra West*

⑈2601645⑈ ⑆011007092⑆011600106058544⑈


---

THIS DOCUMENT HAS AN ARTIFICIAL WATERMARK PRINTED ON THE BACK. THE FRONT OF THE DOCUMENT HAS A MICRO-PRINT SIGNATURE LINE. ABSENCE OF THESE FEATURES WILL INDICATE A COPY.

⟋Sky Bank

SALINEVILLE, OHIO
MEMBER FDIC

2601644

5-709/110

Remitter
Southersby Development Corp
#1300317698

Date June 10, 2004

Pay   **Jefferson Hills Borough**                    $ 9,750.00
to the order of

EXACTLY $ 9 7 5 0 AND 0 0 CTS                         Dollars

Storm Sewer Fee

Official Check                          Drawer Sky Bank

ISSUED BY: TRAVELERS EXPRESS COMPANY, INC.
P.O. BOX 9476, MINNEAPOLIS, MN 55480
DRAWEE: BOSTON SAFE DEPOSIT AND TRUST COMPANY
BOSTON, MASSACHUSETTS

*Sandra West*

⑈2601644⑈ ⑆011007092⑆011600106058544⑈



Consulting Engineers & Surveyors



The
Gateway
Engineers
Inc.

1011 Alcon Street
Pittsburgh, Pennsylvania 15220-3424

info@gatewayengineers.com
Phone:      412 / 921-4030
Facsimile:  412 / 921-9960

February 5, 2004
C-50334-0001

MEMO TO:          Richard Clark, Borough Manager
                 Bill McVicker, Code Enforcement Officer
                 Roberta Sarraf, Planning Consultant
                 Tim & Ann Murphy, Southersby Development
                 Bob Gales, J.R. Gales & Associates

FROM:            The Gateway Engineers, Inc.
                 Ruthann L. Orner, P.E., Borough Engineer

SUBJECT:         Final Plan Review

PLAN NAME:       Patriot Pointe Subdivision, Phase I

MADE BY:         J.R. Gales & Associates
                 2704 Brownsville Rd.
                 Pittsburgh, PA 15227

MADE FOR:        Southersby Development Group
                 245 Summerlawn Dr.
                 Sewickly, PA 15143

DATE OF PLAN:    January 19, 2004

STATUS:          This plan was reviewed under the Borough Code, Chapter 22, Section 303,
                 Preliminary Plan requirements, under Ordinance No. 606, Section 202, R-
                 3 Zoning requirements, and under the Borough Code, Chapter 26,
                 Stormwater Management requirements.

NOTE:            Fifteen copies of the revised plans shall be submitted to the Borough
                 of Jefferson Hills and one copy of the revised plan must be submitted
                 to The Gateway Engineers, Inc. prior to February 13, 2004 at 3:00
                 p.m. to be on the February 23, 2004 Planning Commission agenda.
                 This plan is not recommended for preliminary approval.

EXHIBIT "A"

Branch Office:  Gigliotti Plaza Suite 210 • 20120 Route 19 • Cranberry Township, PA 16066 • 724-779-8940 • 724-779-8942 (Fax)

Items to be Revised as per the Check Lists & General Comments and shall be revised prior to final approval:

1.  The plan should show, if applicable, a proposed lighting plan.

2.  Please highlight the areas on the grading plan which are to be grouted to fill mine voids and ensure stable placement of infrastructure, including roads.

3.  The sanitary and storm sewers are not laid out to minimize future problems with maintenance. The laying of sewers traversing hillsides is not acceptable as maintenance is not practical or cost effective. A possible alternate to the existing layout has been completed and we would like the opportunity to discuss it.

4.  The stormwater management plan would have to be modified to reflect the above changes.

5.  An access road or path must be created for maintenance to the stormwater facility.

6.  Lot 119 has a 1:1 slope in the rear of the yard, please revise the grading plan.

7.  No grading is permitted within 5 feet of the property line.

8.  The pavement is ending prior to Lot 111. Therefore, we would prefer that the storm sewer for that lot be run in the front when the house is built during Phase II.

9.  The Borough does not allow curved pipe. Please correct alignment between MH S-2 and Inlet #8, MH S-5 and inlet #5.

10. An ACCD approved erosion and sedimentation plan must be submitted. The plan should show inlet protection, filter fabric, diversion channels or any other facility being placed.

G: Projects 50000 Jefferson\50334 Patriot Pointe Subdivision\Docs\Phase 1review.WPD

2



## TYPICAL PAVEMENT SECTION

Labels within typical section:
- 1-1/2" ID-2 Bituminous Wearing Course
- 3" ID-2 Bituminous Binder Course
- Choke W/ 2" of #67 Aggregate or Stone
- 8" AASHTO #1 Crushed Aggregate or Stone Base Course
- 3" Crown To Conform Parabola
- Slope: 1/2" Per Ft.
- Geotextile Cloth (300 lb. Min. Roll, 6oz per Sq. Yd.) Woven Fabric
- The Entire Trench Shall Be Wrapped In Class I Geotextile Cloth
- Graded Aggregate or Stone No. 57
- 6" ADS N-12 or 6" P.V.C. Perforated Drain Pipe (Both Sides Of Road).
- Symetrical About Centerline
- 13'-0", 5'-0", 6" Min., 6", 1'-6", 11'-6"
- 6", 2", 4-1/2", 8", 1'-10", 12"

## ALTERNATE PAVEMENT SECTION

Labels within alternate section:
- 1-1/2" ID-2 Bituminous Wearing Course
- 2" ID-2 Bituminous Binder Course
- 5" Bituminous Concrete Base Course
- 3" Crown To Conform Parabola
- Slope: 1/2" Per Ft.
- Geotextile Cloth (300 lb. Min. Roll, 6oz per Sq. Yd.) Woven Fabric
- The Entire Trench Shall Be Wrapped In Class I Geotextile Cloth
- Graded Aggregate or Stone No. 57
- 6" ADS N-12 or 6" P.V.C. Perforated Drain Pipe (Both Sides Of Road).
- Symetrical About Centerline
- 13'-0", 5'-0", 6", 6" Min., 1'-6", 11'-6"
- 6", 6", 5", 1'-10", 12"

Notes: All Aggregate Sizes Shown Are AASHTO Numbers Unless Otherwise Noted

After One (1) Year, An Additional One Inch (1") of ID-2 Wearing Course In Compacted Thickness Must Be Installed

All Depths Shown Are Compacted Depths.

All Materials Shall Conform To PennDOT Publication 408.

ADOPTED BY COUNCIL SEPTEMBER 18, 2000

| REVISIONS:<br>SEPTEMBER, 2000 | BOROUGH OF JEFFERSON HILLS<br>"PUBLIC IMPROVEMENT REQUIREMENTS" |  |
| --- | --- | --- |
|  | THE GATEWAY ENGINEERS, INC.<br>PITTSBURGH, PA | J-1<br>SHEET 1 OF 2 |

The components of the pavement structure shall be designed and constructed in accordance with PennDOT publication (1990 Edition) Form 408 Specifications Section 401 unless otherwise modified.

Core samples shall be taken prior to placing the wearing course. The acceptable tolerance will be one forth inch (1/4"). If deficiencies exist, the contractor, will be required to remove, replace or otherwise satisfactorily correct the deficient areas. The cutting of the test holes, refilling and compacting with hot mix or acceptable material shall be done by and at the expense of the contractor within 24 hours of taking the cores.

Once the final wearing course of bituminous paving is placed, the contractor shall seal the gutter line with AC20 asphalt cement by overlapping 3" on to the wedge curb and extending 9" onto the cartway, around all inlets, manholes, water and gas valve boxes etc. in accordance with PennDOT Publication (1990 Edition) Form 408 Specifications Section 401.3(J)3. as modified.

The contractor shall provide the following certifications during the paving operation as required:

1. Bill of lading for the liquid asphalt.
2. Certified design mix formula from PennDOT.
3. Certifications of density testing.

NOTE:
When paving roads in the Borough, the contractor may be required to reduce the loads of asphalt to reduce the stress on the existing Borough roads or post a bond for any repairs required because of damage due to hauling over the Borough roads. The contractor shall contact the Borough for any restrictions that may apply to the project.

The Borough representative will be required to perform the testing of the bituminous pavement as part of their inspection service to the Borough. The testing of the material will be in accordance with PennDOT Publication 408 and the Borough's standard details and ordinace requirements. The testing will be performed to verify the density of the bituminous for proper compaction and once the streets are paved, prior to final layer of pavement being placed, cores of the pavement will be taken to verify the depth of the pavement. Any deficiencies in the depth must be corrected, based on the results of those corings, in order for the Borough to accept the roadways. The rates will be in accordance with the rate schedule posted with the Borough.

* All aggregate sizes shown are AASHTO numbers unless otherwise noted.

* Additional subgrade drains may be required by the borough engineer where underground water is encountered.

* If the subbase is not installed by November 1, the bituminous pavement must be delayed until the next paving season.

| ADOPTED BY COUNCIL SEPTEMBER 18, 2000 | BITUMINOUS PAVEMENT | |
|---|---|---|
| REVISIONS:<br>SEPTEMBER, 2000 | BOROUGH OF JEFFERSON HILLS<br>"PUBLIC IMPROVEMENT REQUIREMENTS" | |
| | THE GATEWAY ENGINEERS, INC.<br>PITTSBURGH, PA | J-1<br>SHEET 2 OF 2 |

# J. R. GALES & ASSOCIATES, INC.

### FACSIMILE TRANSMITTAL

#### (412) 885-1320

DATE: _3/26/04_  PROJECT NO.: _03-77000_

TO: _Southersby Dev_  NUMBER OF PAGES: _3_
_Gateway ENG._  (Including cover)

_（412) 749-9333 *51_  ATTENTION: _ANN & TIM MURPHY_
FAX #: _(412) 921-9960_  _Ken Orie_

FROM: _Kim Gates_  REGARDING: _Patriot_
_Pointe_

COMMENTS: _____

_____

_____

HARD COPIES TO FOLLOW: _No_

IF YOU DON'T RECEIVE ALL MATERIALS SENT PLEASE CALL (412) 885-8885.

### PLEASE NOTE:

THIS MESSAGE IS INTENDED ONLY FOR THE USE OF THE ADDRESSEE AND MAY CONTAIN INFORMATION THAT IS PRIVILEGED AND CONFIDENTIAL. If you are not the intended recipient, you are hereby notified that any dissemination of this communication is strictly prohibited. If you have received this communication in error, please notify us by telephone (at number above). Thank you.

#03-77000   Revised: 3/24/04
17-Mar-04

### Engineers Estimate for the
### Patriot Pointe
## Phase One

| Item | Description | Quantity | Unit | Unit Price | TOTAL PRICE |
|------|-------------|----------|------|-----------|-------------|
| 6 | **Erosion & Sedimentation Control Measures** | | | | |
| | a) Rock Construction Entrance | 50 | C.Y. | $50.00 | $2,500.00 |
| | b) 30" Filter Fabric Fence | 1,390 | L.F. | $3.50 | $4,865.00 |
| | c) Detention Pond | 1 | L.S. | $6,500.00 | $6,500.00 |
| | d) Interceptor Channel No. 1 | 520 | L.F. | $6.00 | $3,120.00 |
| | e) Rock Riprap R-8 | 5 | TONS | $40.00 | $200.00 |
| | f) Supersilt Fence | 115 | L.F. | $6.25 | $718.75 |
| | g) Earth Berm | 400 | L.F. | $6.75 | $2,700.00 |
| | h) Emergency Spillway R-6 Riprap | 20 | TONS | $40.00 | $800.00 |
| | i) Low Flow Channel R-4 Riprap | 17 | TONS | $13.95 | $237.15 |
| | j) Jute Mat | 19,042 | S.Y. | $1.00 | $19,042.00 |
| | k) Silt Sacks | 18 | EA. | $100.00 | $1,800.00 |
| | l) R-4 Riprap | 6 | TON | $13.95 | $83.70 |
| | m) Baffles | 90 | L.F. | $14.25 | $1,282.50 |
| | n) Temporary Risers | 1 | L.S. | $1,500.00 | $1,500.00 |
| 8 | **Utility Trenching** | 1,590 | L.F. | $2.40 | $3,816.00 |
| 9 | **Mine Grouting (Duplex Lots)** | 4 | EA. | $9,000.00 | $36,000.00 |
| 10 | **Survey Monuments** | 4 | EA. | $335.00 | $1,340.00 |
| | | | | SUBTOTAL | $436,266.10 |
| | | | | 10% Contingency | $43,626.61 |
| | | | | | $479,892.71 |

This estimate <u>does not</u> include the following:
Permits
Bonds
Inspection Fees
Buildings
Recommendations required by the Geotechnical Engineer

# BOROUGH OF JEFFERSON HILLS
# PLANNING COMMISSION
### 925 OLD CLAIRTON ROAD
### JEFFERSON HILLS, PA 15025-3133
### (412) 655-7760
### Fax: (412) 655-3143



February 25, 2004

Saundra J. Mortle, Secretary/Treasurer
Borough of Jefferson Hills
925 Old Clairton Road
Jefferson Hills, PA 15025

Dear Mrs. Mortle:

At the regular meeting held February 23, 2004 the Planning Commission unanimously recommended the following:

1. Final approval was granted for a 23 lot subdivision known as Patriot Pointe Phase 1 by Southersby Development, located at the end of Randolph Drive South and at the end of Jefferson Ridge Drive, subject to the Developer's Agreement for Phase 1 including the requirement that the right-of-way through the Betler property be improved to the extent that it can be used as the only construction entrance for Phase I and that a bond be posted with Phase I for the full cost of improving the right-of-way through Betler's property to the Borough's specifications for a public street.

2. Preliminary approval was granted for a 14 lot subdivision known as the Di Marco Plan of Lots owned by Phillip and Mary Catherine DeMarco, located on Worthington Avenue.

3. Preliminary approval for a 115 lot subdivision known as Chamberlin Ridge Plan of Lots by MB2K Development, Inc., located on the southwest corner of Old Clairton Road and Chamberlin Road approved subject to all criteria being met on the engineering report.

4. Preliminary approval for a Conditional Use known as Dorso Gas Well, Gibson Unit #2, Lot & Block No. 768-C-230 on property off of Coal Valley and Gill Hall Roads, owned by R. Gibson, et.al., and West Jefferson Hills School District, approved subject to bonds, fencing and gate compliance.

5. Preliminary approval for a Conditional Use known as Dorso Gas Well, Jefferson Park #4, Lot & Block No. 473-H-150, located off of West Bruceton Road, owned by Jefferson Memorial Park, Inc., approved, subject to bonds, fencing and gate compliance.

Very truly yours,

BOROUGH OF JEFFERSON HILLS
PLANNING COMMISSION

Joyce Bernard (le)
Joyce Bernard
Acting Secretary

JB/le
cc:   Council
     Mayor
     Solicitor
     Engineer
     Planning Consultant
     Manager
     Pub. Svc. Coord.

EXHIBIT "B"



## The Gateway Engineers Inc.

1011 Alcon Street
Pittsburgh, Pennsylvania 15220-3424

info@gatewayengineers.com
Phone:    412 / 921-4030
Facsimile: 412 / 921-9960

March 26, 2004
C-50334-0001

George Gobel, Esquire
616 West Fifth Avenue
McKeesport, PA  15132

RE:   Patriot Pointe Phase I
      Borough of Jefferson Hills
      Developers Agreement

Dear George:

I have reviewed the revised construction costs for the bonding information submitted by the developer and their Engineer, J.R. Gales, for the above project and the costs are in order.

| Item Description | Estimated Cost |
|---|---|
| Storm Sewers | $  81,564.00 |
| Sanitary Sewers | $  69,967.00 |
| Grading | $  85,750.00 |
| Bituminous Paving | $ 112,480.00 |
| E & S Control | $  45,349.10 |
| Misc. (utility trenching, grouting) | $  39,816.00 |
| Total | $ 434,926.10 |
| **Amount to be Bonded (110%)** | $ 478,418.71 |

| Escrow Amounts: | | |
|---|---|---|
| | Engineering & Inspection (3%) | $ 14,352.56 |
| | Legal | $  8,000.00 |

Other Fees To Be Filed:

| | | |
|---|---|---|
| Storm Sewer Fee (39 lots) | $ | 9,750.00 |
| Monument Escrow Fee | $ | 1,340.00 |
| Mylar Fee | $ | 200.00 |
| Street Sign Fee (5 stop. 3 street) | $ | 475.00 |

EXHIBIT "C"

MAR 2 9 2004

Branch Office:  Gigliotti Plaza Suite 210 • 20120 Route 19 • Cranberry Township, PA 16066 • 724-779-8940 • 724-779-8942 (Fax)

March 26, 2004
C-50056-0001
Page 2

The following is information or exhibits included for your use in the development of the developers agreement:

- The drawings were prepared by J.R. Gales & Associates, No. 03-77000, Sheets No. 1 through 11, inclusive and the Plan for Recording, Sheets 1 through 4 inclusive.
- A final review dated February 5, 2004. All issues have been resolved from this review.
- Please indicate in the developer's agreement that the signs (stop, street) are required to be installed by the Borough.
- The detail J-1 is attached and it stipulated that the top wearing coat of asphalt must be laid within twelve months of the installation of the base.
- Adherence to Chapter 22 subdivision and land developers ordinance as revised must be required. If you could specifically mention that a pre-construction meeting must be held, six sets of drawings submitted one week prior to the meeting; and all bonds posted prior to any work being started. Also, please make a note so that the new procedures for testing and acceptance of improvements be indicated.

Please mail the developer's agreement to:

Southersby Development Corp
245 Summerlawn Dr.
Sewickly, PA 15143

If you have any questions, please call me.

Very Truly Yours,
THE GATEWAY ENGINEERS, INC.

Ruthann L. Omer, P.E.
Borough Engineer

Enclosure

cc:    Richard Clark, Borough Manager
       Sandy Mortle, Borough Secretary
       Ann Murphy, President, East Suburban, Inc.
       Kim Gales, PE, JR Gales & Associates
       Kenneth L. Orie, EIT, Assistant Borough Engineer



The
Gateway
Engineers
Inc.

1011 Alcon Street
Pittsburgh, Pennsylvania 15220-3424

info@gatewayengineers.com
Phone:     412 / 921-4030
Facsimile: 412 / 921-9960

May 3, 2004
C-50334-0001

George Gobel, Esquire
616 West Fifth Avenue
McKeesport, PA   15132

RE:   Patriot Pointe Phase I
      Borough of Jefferson Hills
      Developers Agreement

Dear George:

The developer is required as a condition of the approved Phase 1 plan to bond the improvements of the access road from Gill Hall Road. The following amount submitted by their engineer, Kim Gales, P.E., is an approved amount and reflects the improvements as outlined in the preliminary plan approval.

| Item Description | Estimated Cost |
|---|---|
| Bituminous Paving | $ 44,280.00 |
| Storm Sewers | $ 13,200.00 |
| Grading | $ 24,000.00 |
| Total | $ 81,480.00 |
| Amount to be Bonded (110%) | $ 89,628.00 |

If you have any questions, please call me.

Very Truly Yours,
THE GATEWAY ENGINEERS, INC.

Ruthann L. Omer, P.E.
Borough Engineer

cc:   Richard Clark, Borough Manager
      Sandy Mortle, Borough Secretary
      Ann & TimMurphy, Southersby Development Corp.
      Kim Gales, PE, JR Gales & Associates

EXHIBIT "D"

RECEIVED

MAY 0 2 2004

BY

G:\Projects\50000 Jefferson\50334 Patriot Pointe Subdivision\Docs\access road bond.doc

From:

*8/5/05 cc Omer*
*original to Scotkensky Dew & Gabel*

## DEVELOPER'S AGREEMENT

MADE AND ENTERED into this __27__ day of __July__,
2005, by and between: SOUTHERSBY DEVELOPMENT CORP., a
Pennsylvania Corporation, hereinafter called "Developer,"

AND

THE BOROUGH OF JEFFERSON HILLS, a municipal corporation of
the Commonwealth of Pennsylvania, hereinafter called "Borough."

WHEREAS, the Developer has laid out or is desirous of laying
out certain unimproved land owned by the Developer, or of which
the Developer is the equitable owner, as the same is defined by
the Pennsylvania Municipalities Planning Act, and which lands are
situate in the Borough of Jefferson Hills, Allegheny County,
Pennsylvania, in a proposed plan of lots or development known as
"PATRIOT POINTE - PHASE TWO" hereinafter the "Plan;" and

WHEREAS, the Developer is desirous of having the Plan
approved by the Borough or, if the same shall already have been
approved, of entering into an agreement with the Borough relating
to the development, dedication and acceptance of the Plan; and

WHEREAS, the Developer is desirous of obtaining building
permits for construction of homes, buildings or other structures
upon the said premises; and

WHEREAS, the Borough requires that certain public and
private improvements, as more specifically described in the
Development Plans (the "Plans") and in attached Exhibits A and B

1

**EXHIBIT**

**B**

From:

02/07/2007 10:48    #922 P.003/028

(hereinafter called "Improvements"), be installed and constructed
in the said subdivision or development, including, but not
limited to, streets, roadways, bituminous paving, sanitary
sewers, storm sewers, storm water detention system, grading,
walkways, curbs, water mains, storm drains, erosion and
sedimentation control, utility trenching, grouting, and that
proper easements be established for maintenance of the same, and
that security be posted by the Developer to guarantee the prompt
and proper installation and construction of the said Improvements
contemplated thereon, and of the maintenance of the same
following construction; and

WHEREAS, following the completion of the Plan and the
construction of all the public improvements as aforesaid, the
Borough has indicated its willingness to accept the Plan and the
dedicated streets and sewers constructed thereon.

NOW, THEREFORE, in consideration of the foregoing promises,
and in further consideration of the mutual promises hereinafter
contained, the parties hereto, intending to be legally bound, do
agree as follows:

1.    The Developer has provided development plans (the
"Plans") to the Borough for its approval, which Plans were
approved by the Planning Commission and are specifically
designated as Project No. 24243, Sheets No. 1 through 27,
inclusive and the Plan for Recording, Sheets 1 through 6,
inclusive, prepared by Trant Corporation.  Said Plans have been

2

approved subject to the conditions and requirements set forth by
the Council of the Borough of Jefferson Hills, including, but not
limited to, the conditions and requirements more fully described
on attached Exhibit A hereto, which is the Final Plan Review for
the Plan submitted by the Borough Engineer dated January 26,
2005; and the conditions and requirements more fully described on
attached Exhibit B hereto, which is a letter submitted to the
Borough Solicitor by the Borough Engineer dated April 11, 2005.
The Developer does by these presents covenant and agree that it
will abide by and observe all of the conditions and requirements
set forth by the Council of the Borough of Jefferson Hills, the
conditions and requirements set forth on attached Exhibits "A"
and "B" hereto during construction and shall accomplish all such
conditions prior to acceptance of public improvements by the
Borough.  The Plans depict the Improvements to be constructed and
the Conditions and Requirements pursuant to this Agreement and
said Plans and Conditions and Requirements are specifically
incorporated herein by reference.

    2.   With respect to the installation of the Improvements,
including, but not limited to, the streets, roadways, bituminous
paving, sanitary sewers, storm sewers, storm water detention
system, grading, walkways, curbs, storm drains, erosion and
sedimentation control, utility trenching and grouting shown on
the Plans, or as approved and required by the Council of the
Borough of Jefferson Hills, the Developer shall post Completion

Bonds as required by the Pennsylvania Municipalities Planning
Code, Section 509, and Borough of Jefferson Hills Ordinance No.
685, Section 310, in the form of a surety bond or an irrevocable
letter of credit, which shall be subject to the approval of the
Borough Solicitor both in form and content, either of which shall
be in an amount equal to 110% of the estimated cost of
construction of the Improvements, written by a surety company
authorized to do business in the Commonwealth of Pennsylvania, or
any federal or state chartered lending institution authorized to
issue irrevocable letters of credit, in an amount of NINE HUNDRED
TWENTY-TWO THOUSAND SEVEN HUNDRED FIFTY-ONE and EIGHTY-FIVE
HUNDREDTHS ($922,751.85) DOLLARS, as set forth in attached
Exhibit "B" hereto.  The Completion Bonds shall name the Borough
as obligee and shall guarantee the completion of the
Improvements, including, but not limited to, streets, roadways,
bituminous paving, sanitary sewers, storm sewers, storm water
detention system, grading, walkways, curbs, storm drains, erosion
and sedimentation control, utility trenching, grouting and any
other public improvements which may have been required by the
Borough Engineer or the Council of the Borough or set out in the
Plans, and shall be posted prior to the commencement of work.
Additionally, the Completion Bonds shall name the Borough as
Obligee and shall guarantee the full cost of improving the right-
of-way through the Betler property to the Borough's
specifications for a public street.  The Completion Bonds shall

4

require the completion of the Plan or the Improvements within the
period of time required by the Borough and agreed upon by the
Developer, which shall not exceed a period of two (2) years,
measured from the date of the execution of this Agreement.   In
the event that the Developer shall fail to complete the
Improvements required by this Agreement within the time period
designated herein, or shall abandon the project for a period of
one (1) year, then the Borough may, but shall not be obligated
to, proceed to complete the Improvements and to collect the costs
of such Improvements from the Developer and/or the bonding
company.   Should the cost of such Improvements be in excess of
the amount of the Completion Bonds required hereunder, such
excess shall nevertheless be collectible from the Developer or
shall be filed as a lien against the property itself and enforced
thereafter as all other obligations payable to the Borough.   Any
such action of the Borough in completing the Improvements shall
not, in and of itself, constitute acceptance of or create an
obligation on the part of the Borough to repair or maintain the
same thereafter.   The Developer does by these presents authorize
and empower the Borough to enter as a lien against the property
an amount equal to the amount which the Borough shall be required
to expend to complete the Improvements referred to herein.
Nothing contained herein, however, shall require the Borough to
pursue any particular remedies authorized herein, and the Borough
may proceed against the Completion Bonds provided for herein even

5

though no action shall be taken or other remedies pursued by the Borough.

3.   In addition to the Completion Bonds insuring the completion of improvements, the Developer shall be required to provide a Maintenance Bonds in an amount equal to 15% of the actual cost of construction, written by a surety company authorized to do business in the Commonwealth of Pennsylvania and guaranteeing the repair or the cost of repair of any defects resulting from improper workmanship or materials or from any defects appearing in any of the public improvements provided by the Developer hereunder.  The Developer and the Maintenance Bond provided for these purposes shall covenant that the Developer will repair any defects existing in the aforesaid public improvements within a two (2) year period after the Borough's acceptance of all public improvements of the same and, if the Developer does not repair such defects or correct any conditions which do not comply with Borough specifications, the Borough may, but shall not be obligated to, proceed to repair such defects and collect the cost of such repair from the Developer and/or the bonding company providing the Maintenance Bond for these purposes.  In the event that the cost of repair is in excess of the amount of the Maintenance Bond provided for these purposes, such excess shall nevertheless be collectible from the Developer or shall be filed as a lien against the property itself and enforced thereafter as all other obligations payable to the

6

Borough.  The Developer does by these presents authorize and
empower the Borough to enter as a lien against the property an
amount equal to the amount which the Borough shall be required to
expend to complete the repairs referred to herein.  Nothing
contained herein, however, shall require the Borough to pursue
any particular remedies authorized herein, and the Borough may
proceed against the Maintenance Bond provided herein even though
no action shall be taken or other remedies pursued by the
Borough.

4.  In lieu of Completion Bonds or Maintenance Bonds as
required in paragraphs 2 and 3 of this Agreement, the Developer
may post such security as may be approved under the provisions of
the Pennsylvania Municipalities Planning Act provided, however,
that in the event that the security to be posted by the Developer
shall be in the form of a letter of credit or a cash deposit, an
agreement acceptable to the Borough Council shall be duly
executed and entered into by the Developer, the Borough and such
other party as may be the source of the alternate security, and
provided such institution is authorized to conduct such business
within the Commonwealth of Pennsylvania.  The amount of the
security to be posted shall be as set forth in Paragraphs 2 and 3
hereof, and which amount shall be determined by the submission to
the Borough of a bona fide bid or bids from a contractor or
contractors chosen by the financial institution posting the
security.  In the event that the completion of the project shall

7

require more than one year from the date of the posting of the
financial security, then the amount of such security may be
increased by an additional ten (10%) percent for each year period
beyond the first anniversary date.

    5.  As the work of installing the required public
improvements proceeds to the satisfaction of Borough
representatives, the Developer may request the Borough to release
or to authorize the release from time to time of such portions of
the Completion Bonds posted with the Borough which may be
necessary for payment to the contractor or contractors performing
the work.  The Borough shall authorize the release by the bonding
company or financial institution posting the security of such
amounts as shall be certified by the Borough Engineer, and which
shall fairly represent the value of the public improvements
completed less, however, a retention of ten (10%) percent of the
amount requested to be released, which shall be retained by the
Borough until the Borough's acceptance of all public
improvements.

    6.  The Developer further agrees to convey to the Borough
appropriate easements for the construction and maintenance of,
and dedication of, any storm and sanitary sewers, storm water
retention systems, streets, roadways and any other public
improvements which may be required by the Plans.

    7.  The Developer shall cause its contractors or sub-
contractors to obtain and maintain liability and other insurance

8

From:                                02/07/2007 10:49        #922 P.010/028

coverage and furnish certificates of insurance as required by the Borough.

    8.   In addition to the foregoing requirements, the Developer agrees that it will at its own expense:

    a.   comply in all respects with the provisions of the Borough's Subdivision and Grading Ordinances, and all amendments enacted thereto prior to the date of filing of the Plan Application; the Borough's Grading Ordinance, and all amendments thereto; the development Plans and accompanying specifications; other applicable Borough Ordinances, Regulations, sewer agreements and standards of construction; and with the requirements and lawful directives of the Borough Engineer.

    b.   grade and pave roads as shown on the plans in accordance with the Borough's specifications as set forth in the Borough Subdivision Ordinance and all other applicable Ordinances and Regulations, and which provide that the paving shall not be done until all sanitary sewer laterals and utility service lines crossing such streets are installed and backfilled in accordance with Borough specifications. Additionally, the final top coat or wearing course of the paved roads shall be installed within twelve (12) months of the installation of the base, unless this deadline is extended by the Borough Engineer to enable the Developer to complete construction of all homes in the Plan. The final paving top coat or wearing course shall adhere to Borough typical drawing J-1, and no slag fill shall be permitted.

9

c.   improve the right-of-way through the Betler property to the extent that it can be used as the only construction entrance for the Plan and that a Bond be posted for the Bond for the full cost of improving the right-of-way through Betler property to the Borough's specification for a public street.  No construction-related traffic shall enter the Plan from Jefferson Ridge, and such construction-related traffic entering from Jefferson Ridge is strictly prohibited.

d.   install all utilities as required by this Agreement and the approved Plan, and for which the Developer has posted a Completion Bonds or other security approved by the Borough under this Agreement.

e.   install the following utilities _prior to_ the sale of any lots in the plan and the issuance of any building permits by the Borough, and which utilities are not subject to a Completion Bonds or other security approved by the Borough under this Agreement:

      (1)   water;

      (2)   electric;

      (3)   gas, if available.

Further, the Borough shall not issue, or be required to issue, any building permits to the Developer until all such utilities are installed by the Developer.  In lieu of installing said utilities prior to the sale of any lots in the Plan, and at the option of the Developer, the Developer may choose to post

10

financial security and/or enter into appropriate written
agreements with the applicable utility companies to guarantee the
installation of such utilities.  In such instance, if the
Developer provides written proof of the providing of such
security to the applicable utility companies, or proof of written
agreement with the applicable utility companies for the utilities
to be installed by such utility companies, then the Borough shall
issue building permits and allow the sale of lots prior to the
installation of such utilities.

      f.    present to and obtain the approval of the Borough
Engineer of a detailed plan showing the proposed sanitary sewers,
storm sewers and grades of roads in said Plan prior to the
commencement of construction and set grade stakes for all
sanitary and storm sewer construction; and to present to and
obtain approval of the Department of Environmental Protection of
all Plans relating to sanitary and storm sewers and to obtain the
approval of the County of Allegheny pursuant to the Allegheny
County Storm Water Management Plan.  In addition, the Developer
shall submit the Plans for review and approval of all other
governmental agencies having governmental or regulatory authority
in the area to be developed.

      g.    pay to the Borough any reasonable fees required
for entering into the Developer's Agreement and for tap-in fees
and other expenses as may be required by the Ordinances and
Regulations of the Borough.  The engineering and inspection

11

escrow fees are estimated at $27,682.55; mylar fee of $1,200;
legal fees of $9,800.00 as agreed upon by the parties and as
designated by the Borough; monument escrow fees of $1,600; storm
sewer fees of $18,000; and street sign fees of $775, all of which
shall be deposited with the Borough at the time of execution of
this Agreement. Upon completion of the Improvements, and with
approval of the Borough Engineer, the Borough shall return to the
Developer any funds remaining unexpended out of the above-
mentioned escrow funds, without interest and all such expended
escrow funds shall be fully accounted for and documented with the
Developer.

      h.    the Zoning Officer of the Borough of Jefferson
Hills, the Borough Engineer, and/or any other persons appointed
by the Borough for the enforcement of Borough Ordinances and
Regulations shall be notified by the Developer at least two (2)
business days in advance of commencement of construction and/or
excavation work taking place, and at least five (5) business days
in advance of commencement of paving work taking place, including
the time when such construction and/or excavation and/or paving
is to commence and the nature of the same and, additionally, the
Developer shall provide materials, data, subcontracts and any
other pertinent information to enable such representatives of the
Borough to determine that the work is being conducted and
progressing in accordance with Borough Ordinances and
Regulations. Failure of the Developer to provide such

12

information and materials, and to notify such Borough
representatives of same in a timely manner, or to conduct work in
accordance with Borough Ordinances and Regulations, shall be
sufficient grounds for such Borough representatives to issue a
cease and desist and/or stop work order against the Developer
and/or any contractor or subcontractor performing such services,
and the Developer agrees that such work shall cease and desist
and stop until the requirements stated herein have been met.
Further, the Developer shall have a pre-construction meeting with
Borough representatives prior to commencing any construction,
excavation or paving activities, and the Developer shall provide
the Borough with six (6) sets of construction drawings at least
one (1) week prior to such pre-construction meeting.

     i.   obtain written permission from adjourning property
owners prior to draining or discharging any surface water, other
than natural watercourses, on said adjoining properties.

     j.   connect any springs or other waters encountered
during construction to the proposed storm sewers or, if necessary
in the opinion of the Borough Engineer, sewer such springs or
other water to the proper outlet. Any construction of sewers
shall be below grade and easement provided.

     k.   during construction, the Developer shall police
the construction area daily, keeping the same free and clear of
all rubbish, refuse, brush and debris; the Developer will
accumulate said material and deposit the same in an area

13

specified by the Borough representative until such time as the accumulated material is removed from the site by the Developer; and the Developer shall contain such material in such a manner so that it will not become wind-blown spread, or otherwise become a nuisance. All soil washed or carried onto public streets during construction shall be cleaned up each day by the Developer. Upon completion of the construction, the Developer shall remove from the site, and dispose of, all brush, rubbish and debris, leaving the Plan free and clear of the same.

l.     remove all temporary buildings or structures within one (1) year after erection of the same.

m.     construct all the Improvements in said Plan in accordance with the provisions of the approved development Plans and make no change in the location or grade of roads, nor any change in design or location of sanitary and storm sewers or water lines, or make any other change in the approved development Plans without the prior written approval of the Borough.

n.     conform with all the recommendations outlined in a report from the United States Department of Agriculture Soil Conservation Service and obtain the advice of a qualified Soils Engineer and/or Engineer to insure the proper installation of the fill areas; to construct and maintain the recommended drainage ditches and silt basin to prevent water and siltation damage to adjoining properties; and to keep, maintain and be responsible for the filled and graded areas for a period of eighteen (18)

14

months. Reports shall be submitted to the Borough by the qualified Soils Engineer and/or Engineer at least once every four (4) weeks during construction.

      o.   furnish the Borough "As Built" plans of the sanitary and storm sewers and storm water management facility verifying that the sewers and storm water management facility were built within the easements; plans and profiles of the roads, showing established center lines; and all other reasonable detail required by the Borough Engineer.

      p.   furnish the Borough compaction tests for the pavement and fill slopes installed; tests verifying pavement depths; tests verifying watertight requirements for the sanitary sewers and storm sewers; and other reasonable testing results required by the Borough Engineer.

      q.   furnish the Borough with a Homeowner's Association Agreement in accordance with the requirements of the approved Plan.

      r.   comply with any and all requirements of the Commonwealth of Pennsylvania, Department of Environmental Protection, including any administrative consent orders issued by the Department of Environmental Protection, as they relate to the Plan.

    9.   All signs, including without limitation, stop signs and street name signs, shall be installed by the Borough.

15

10.   The Developer does further covenant and agree that it will indemnify and hold harmless the Borough, its employees and agents, from any liability to third persons for deaths, personal injuries or property damage arising from the construction of roads, storm and sanitary sewers, or water lines; grading; or from any other claim or liability which may arise with respect to the Developer's activities in connection with construction of said Plan.  Particularly, but without limitation, the Borough is not responsible for the compaction or quality of the work that is to be completed for the grading or drainage on the site.  The Borough inspection is only for general adherence to the approved grading plan in accordance with the grading and drainage ordinance.  Further, any work that is completed after the final inspection that is beyond the approved grading plan is not the responsibility of the Borough.

11.   In consideration of the foregoing, the Borough agrees that it will, after the posting by the Developer of all Completion and Maintenance Bonds or other approved surety provided for in this Agreement, approve the Developer's Plan and, if approved prior thereto, to formally adopt and accept for public purposes, the dedicated roads, sanitary sewers, storm sewers and other public improvements in the said Plan, but only after the same shall have recommended for acceptance by the Borough Engineer and accepted as completed to the satisfaction of the Borough, after the full and complete performance hereunder by

16

the Developer to the satisfaction of the Borough and its
Engineer.  Further, the Borough agrees, after approval of
completion of the Developer's Plan as stated above, to promptly
release to the Developer the Completion Bond, or such security as
shall have been provided in lieu thereof, and, following the
appropriate period of maintenance as provided in paragraph 4, to
release all Maintenance Bonds to the Developer and to discharge
the same.  Nothing contained herein, however, shall obligate the
Borough to issue any types of permits in the event that the
Department of Environmental Protection or some other regulatory
or governmental agency shall limit or ban the issuance of permits
such as tap-ins, module approvals, etc.

12.  In the event that any term, condition, clause or
provision of this Agreement shall be determined or declared to be
void or invalid in law or otherwise, then only that term,
condition, clause or provision shall be stricken from this
Agreement and in all other respects this Agreement shall be valid
and continue in full force, effect and operation.

IN WITNESS WHEREOF, the parties hereto have set their hands
and seals the day and year first above written.

ATTEST:                              SOUTHERSBY DEVELOPMENT CORP.,
                                     a Pennsylvania Corporation


ATTEST:                              BOROUGH OF JEFFERSON HILLS


Saundra J. Moytle                    President of Council
Secretary/Treasurer


17

3045548

3045549

.04/18/05  10:10 FAX 412 921 9960          GATEWAY ENGINEER


**GATEWAY**
On Call. On Time. On Target.

January 26, 2005
C-50334-0001

MEMO TO:         Richard Clark, Borough Manager
                 Bill McVicker, Public Service Coordinator
                 Roberta Sarraf, Planning Consultant
                 Tim & Ann Murphy, Southersby Development
                 Don Trant, Trant Corporation

FROM:            The Gateway Engineers, Inc.
                 Ruthann L. Omer, P.E., Borough Engineer

SUBJECT:         Final Plan Review

PLAN NAME:       Patriot Pointe Subdivision, Phase 2

MADE BY:         Trant Corporation
                 11676 Perry Highway, Suite 3100
                 Wexford, PA 15090

MADE FOR:        Southersby Development Group
                 245 Summerlawn Dr.
                 Sewickly, PA 15143

DATE OF PLAN:    7/30/04, Revised 11/09/04, Revised 1/24/05

STATUS:          This plan was reviewed under the Borough Code, Chapter 22, Section 303,
                 Preliminary Plan requirements, under Ordinance No. 606, Section 202, R-
                 2 Zoning requirements, and under the Borough Code, Chapter 26,
                 Stormwater Management requirements.

NOTE:            Fifteen copies of the revised plans shall be submitted to the Borough
                 of Jefferson Hills, and one copy of the revised plan must be submitted
                 to The Gateway Engineers, Inc. prior to February 16 at 3:00 p.m. to
                 be on the February 28, 2005 Planning Commission agenda.

                 This plan is not recommended for approval.

EXHIBIT "A"

04/15/05  10:10 FAX 412 921 8980        GATEWAY ENGINEER



**GATEWAY**

On Call. On Time. On Target.

January 26, 2005
C-50334-0001
Page Two

<u>Items to be revised prior to final approval:</u>

1.   Revise the Pond 2 Peak Discharge values so that they are stating the same value.

2.   The Area and Bulk Regulations provided do not match those in the R-2 Zoning Ordinance.  Please verify the numbers for accuracy.  If a variance has been issued by the Borough to include the numbers provided, please put a note on the plans.

3.   Show the existing watercourses or other significant natural features on the plans.  The unnamed tributary, where the storm water from the site is being drained, should be shown on the plans.

4.   Provide a copy of the approved Erosion and Sedimentation Control Plan from the Allegheny County Conservation District, as required by the Borough Code of Ordinances.

5.   The roof drain is missing on lot 222.

6.   The slope between Manhole CB 227 and EW 202 is less than the required 1%.  Please revise.

7.   Please put a note on the plans to ensure that adequate precautions are taken when building infrastructures in the high risk areas, i.e. the strip mined areas.

G:\Projects\50000 Jefferson\50334 Patriot Pointe Subdivision\Phase 2\Phase 2 review4.WPD

2



**GATEWAY**

On Call. On Time. On Target.

THE GATEWAY ENGINEERS, INC.

1011 ALCON STREET
PITTSBURGH, PA 15220-3424
412.921.4030  PHONE
412.921.9960  FAX

www.gatewayengineers.com

April 11, 2005
C-50334-0002

George Gobel, Esquire
Georgetown Centre, Suite 106
526 East Bruceton Road
Pittsburgh, PA  15236

RE:    Patriot Pointe Phase 2
          Borough of Jefferson Hills
          Developers Agreement

Dear George:

I have reviewed the revised construction costs for the bonding information submitted by the developer and their Engineer, J.R. Gales, for the above project and the costs are in order.

| Item Description | | Estimated Cost |
|---|---|---|
| | Storm Sewers | $ 199,164.32 |
| | Sanitary Sewers | $ 136,516.00 |
| | Grading | $ 102,000.00 |
| | Bituminous Paving | $ 243,965.00 |
| | E & S Control | $ 45,770.00 |
| | Misc. (utility trenching, grouting) | $ 111,450.00 |
| | Total | $ 838,865.32 |
| | Amount to be Bonded (110%) | $ 922,751.85 |

| Escrow Amounts: | | |
|---|---|---|
| | Engineering & Inspection (3%) | $ 27,682.55 |
| | Legal | $ 9,800.00 |

Other Fees To Be Filed:

| | | |
|---|---|---|
| | Storm Sewer Fee (72 lots) | $ 18,000.00 |
| | Monument Escrow Fee (4) | $ 1,600.00 |
| | Mylar Fee (6) | $ 1,200.00 |
| | Street Sign Fee (8 stop, 5 street) | $ 775.00 |

EXHIBIT "B"

A FULL-SERVICE CIVIL ENGINEERING FIRM

MUNICIPAL ENGINEERING ● LAND DEVELOPMENT

MISSION STATEMENT
TO HELP OUR CLIENTS REACH A HIGHER
LEVEL OF SUCCESS THROUGH KNOWLEDGE



**GATEWAY**

On Call. On Time. On Target.

April 11, 2005
C-50334-0002
Page 2

The following is information or exhibits included for your use in the development of the developer's agreement:

- The drawings were prepared by Trant Corporation, Project No. 24243; the last revision was 1/25/2005, Sheets No. 1 through 27, inclusive and the Plan for Recording, Sheets 1 through 6, inclusive.
- A final review was dated January 26, 2005. Not all issues have been resolved from this review.
- Please indicate in the developer's agreement that the signs (stop, street) are required to be installed by the Borough.
- Note that this approval was based on no construction related traffic entering the plan from Jefferson Ridge.
- The detail J-1 is attached and it stipulated that the top wearing coat of asphalt must be laid within twelve months of the installation of the base.
- Adherence to Chapter 22 subdivision and land developers ordinance as revised must be required. Please specifically mention that a pre-construction meeting must be held, six sets of drawings submitted one week prior to the meeting; and all bonds posted prior to any work being started. Also, please make a note so that the new procedures for testing and acceptance of improvements should be indicated.

Please mail the developer's agreement to:

Southersby Development Corp
245 Summerlawn Dr.
Sewickly, PA 15143

If you have any questions, please call me.

Very Truly Yours,
THE GATEWAY ENGINEERS, INC.

Ruthann L. Omer, P.E.
Borough Engineer

Enclosure

cc:     Richard Clark, Borough Manager
        Sandy Mortle, Borough Secretary
        Charles LoPresti, Esq., Borough Solicitor
        Ann Murphy, Southersby Development Group

G:\Projects\50000 Jefferson\50334 Patriot Pointe Subdivision\Phase 2\develop agree.doc



## TYPICAL PAVEMENT SECTION

- 1-1/2" ID-2 Bituminous Wearing Course
- 3" ID-2 Bituminous Binder Course
- Choke W/ 2" of #67 Aggregate or Stone
- 8" AASHTO #1 Crushed Aggregate or Stone Base Course
- 3" Crown To Conform Parabola
- Geotextile Cloth (300 lb. Min. Roll, 6oz per Sq. Yd.) Woven Fabric
- The Entire Trench Shall Be Wrapped In Class I Geotextile Cloth
- Graded Aggregate or Stone No. 57
- 6" ADS N-12 or 6" P.V.C. Perforated Drain Pipe (Both Sides Of Road)

Slope: 1/2" Per Ft.

Symmetrical About Centerline

5'-0"    13'-0"
6" 6"   1'-6"   11'-6"
Min.
12"

## ALTERNATE PAVEMENT SECTION

- 1-1/2" ID-2 Bituminous Wearing Course
- 2" ID-2 Bituminous Binder Course
- 5" Bituminous Concrete Base Course
- 3" Crown To Conform Parabola
- Geotextile Cloth (300 lb. Min. Roll, 6oz per Sq. Yd.) Woven Fabric
- The Entire Trench Shall Be Wrapped In Class I Geotextile Cloth
- Graded Aggregate or Stone No. 57
- 6" ADS N-12 or 6" P.V.C. Perforated Drain Pipe (Both Sides Of Road)

Slope: 1/2" Per Ft.

Symmetrical About Centerline

5'-0"    13'-0"
6" 6"   1'-6"   11'-6"
Min.
12"

Notes: All Aggregate Sizes Shown Are AASHTO Numbers Unless Otherwise Noted

After One (1) Year, An Additional One Inch (1") of ID-2 Wearing Course In Compacted Thickness Must Be Installed

All Depths Shown Are Compacted Depths.

All Materials Shall Conform To PennDOT Publication 408.

ADOPTED BY COUNCIL SEPTEMBER 11, 2000

REVISIONS:
SEPTEMBER, 2000

# BOROUGH OF JEFFERSON HILLS
## "PUBLIC IMPROVEMENT REQUIREMENTS"

PITTSBURGH, PA

J-1

SHEET 1 OF 2

The components of the pavement structure shall be designed and constructed in accordance with PennDOT publication (1990 Edition) Form 408 Specifications Section 401 unless otherwise modified.

Core samples shall be taken prior to placing the wearing course. The acceptable tolerance will be one forth inch (1/4"). If deficiencies exist, the contractor, will be required to remove, replace or otherwise satisfactorily correct the deficient areas. The cutting of the test holes, refilling and compacting with hot mix or acceptable material shall be done by and at the expense of the contractor within 24 hours of taking the cores.

Once the final wearing course of bituminous paving is placed, the contractor shall seal the gutter line with AC20 asphalt cement by overlapping 3" on to the wedge curb and extending 9" onto the cartway, around all inlets, manholes, water and gas valve boxes etc. in accordance with PennDOT Publication (1990 Edition) Form 408 Specifications Section 401.3(J)3. as modified.

The contractor shall provide the following certifications during the paving operation as required:

      1. Bill of lading for the liquid asphalt.
      2. Certified design mix formula from PennDOT.
      3. Certifications of density testing.

NOTE:
When paving roads in the Borough, the contractor may be required to reduce the loads of asphalt to reduce the stress on the existing Borough roads or post a bond for any repairs required because of damage due to hauling over the Borough roads. The contractor shall contact the Borough for any restrictions that may apply to the project.

The Borough representative will be required to perform the testing of the bituminous pavement as part of their inspection service to the Borough. The testing of the material will be in accordance with PennDOT Publication 408 and the Borough's standard details and ordinace requirements. The testing will be performed to verify the density of the bituminous for proper compaction and once the streets are paved, prior to final layer of pavement being placed, cores of the pavement will be taken to verify the depth of the pavement. Any deficiencies in the depth must be corrected, based on the results of those corings, in order for the Borough to accept the roadways. The rates will be in accordance with the rate schedule posted with the Borough.

* All aggregate sizes shown are AASHTO numbers unless otherwise noted.

* Additional subgrade drains may be required by the borough engineer where underground water is encountered.

* If the subbase is not installed by November 1, the bituminous pavement must be delayed until the next paving season.

| | BITUMINOUS PAVEMENT |  |
|---|---|---|
| ADOPTED BY COUNCIL SEPTEMBER 11, 2000 | | |
| REVISIONS: SEPTEMBER, 2000 | BOROUGH OF JEFFERSON HILLS "PUBLIC IMPROVEMENT REQUIREMENTS" | |
| THE CENTRAL ENGINEERS, INC. PITTSBURGH, PA | | J-1 SHEET 2 OF 2 |

From:     Paul R. Robinson
To:        Brimmeier, Bonnie
CC:       Omer', 'Ruthann
Date:     11/5/2007 3:49 PM
Subject:  Re: Murphy

Dear Ms. Brimmeier:

Thank you for the communication and offer to meet on November 16, 2007 at 1:00 p.m. We are very concerned that we already have had a number of meetings, and have offered to assist with the resolution of the erosion issue caused by the municipal sewer line, but we have not been given a response to date. We further understand that a Borough resolution would be necessary to reach an agreement on this and the other various outstanding issues, but we also understand that the November 17th meeting you have suggested will only occur after the November Borough meetings.

As the Borough of Jefferson Hills is aware, Southersby Development has attempted to resolve this erosion issue, as well as the tap fee payment and engineering fee issue, on numerous prior occasions. We have provided the Borough of Jefferson Hills with all information arguably required by 42 Pa.C.S.A. Section 5522. To the extent the Borough of Jefferson Hills would contend otherwise, please allow this to confirm our intent to file a civil action against the Borough of Jefferson Hills for the property damage and resulting damages arising out of the sewer line caused erosion of the Patriot Pointe Development.

The cause of action accrues to Southersby Development Corp., which also has sustained the damages caused by the sewer line installation and erosion, the failure to remedy the condition caused by the sewer line, and the continuing trespass which the Borough of Jefferson Hills has allowed to occur. The Borough of Jefferson Hills possesses the information as to when the sewer line was improperly installed, and its location adjacent to the Patriot Pointe Development.

Please know that we will meet with the Borough of Jefferson Hills and its engineer on November 16, 2007 at 1:00 p.m. as requested but again question the timing of the meeting taking place after the November Borough meetings. We have stressed the significance of the erosion taking place because of the sewer line installation and it being allowed to remain in its present condition, and we have stressed the significant additional damages which will occur if the eroded land subsides and damages the sewer line. Unfortunately, and despite our various offers to assist, we have received no response to this serious situation, and the winter, winter thaw, and ensuing spring rains can only increase the danger involved.

We would ask that this issue, and the offer of Southersby Development, be provided to the Borough of Jefferson Hills and submitted to it for a resolution at the November meetings. We hope the Borough of Jefferson Hills and its engineer appreciate the



EXHIBIT

C

significance of the situation which has been allowed to continue, and we hope this information is being provided to all involved with its governance.

We look forward to hearing from you and the Borough of Jefferson Hills concerning our request to have this issue resolved immediately as required.

Sincerely,


Paul R. Robinson, Esquire
Meyer Darragh
4850 U.S. Steel Tower
600 Grant Street
Pittsburgh, PA 15219
(412) 261-6600
FAX: (412) 471-2754
probinson@mdbbe.com

==========================================
The information in this e-mail is confidential and may be protected by the attorney's work product doctrine or the attorney/client privilege. It is intended solely for the addressee(s); access to anyone else is unauthorized.  If this message has been sent to you in error, do not review, disseminate, distribute or copy it. Please reply to the sender that you have received the message in error, then delete it.  Thank you for your cooperation.
==========================================

>>> "Bonnie Brimmeier" <bbrim@comcast.net> 11/1/2007 5:02 PM >>>
Harlon and Paul

Ruthann and I are suggesting a meeting at Gateway to work to resolve the loose ends on Patriot Pointe on November 16 at 1pm. Please let me know if that works for you.


Bonnie Brimmeier, Esquire

1004 McKnight Park Drive

Pittsburgh, PA 15237

Office Phone: 412.366.3533

Cell Phone:    412.370.1649

This transmission is intended only for the use of the addressee and may contain information that is privileged, confidential, and exempt from disclosure under applicable law. If you are not the intended recipient, or the employee or agent responsible for delivering the message to the intended recipient, you are hereby notified that any dissemination, distribution, or copying of this communication is strictly prohibited.  If you have received this communication in error, please notify us immediately either by E-mail or by phone at 412-366-3533.

## VERIFICATION

I, Tim Murphy, an officer of the plaintiff corporation in the above-captioned matter, do verify that the averments of fact made in the foregoing complaint are true and correct based on my knowledge, information and belief and that I am authorized to make this verification on its behalf.

I understand that false statements herein are made subject to penalty of 18 Pa.C.S.A. § 4904 relating to unsworn falsification to authorities.

Dated: 1/19/09

## PROOF OF SERVICE

This is to certify that a true and correct copy of the foregoing pleading has been served upon all parties on the date and in the manner listed below, at the following address:

**VIA First Class Mail, Postage Prepaid:**
Daniel T. Moskal, Esq.
Law Office of Joseph S. Weimer
975 Two Chatham Center
Pittsburgh, PA 15219
(*Counsel for Defendant,*
*Jefferson Hills Borough*)

**VIA Sheriff's Service:**
William L. McVicker, Sr.
113 Garden Drive, Apartment E,
Pittsburgh, Pennsylvania 15236

MEYER, DARRAGH, BUCKLER,
BEBENEK & ECK, P.L.L.C.

Date: Jan. 22, 2009      By: _____
PAUL R. ROBINSON, ESQUIRE
JAMES D. MILLER, ESQUIRE

P0863521.1