IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| SOUTHERSBY DEVELOPMENT CORPORATION, | No. 2:09-cv-00208-CB |
| Plaintiff, | **MAGISTRATE JUDGE CATHY BISSOON** |
| v. | PAUL R. ROBINSON, ESQUIRE PA I.D. #65581 |
| BOROUGH OF JEFFERSON HILLS AND WILLIAM L. McVICKER, in his individual and official capacity, | JAMES D. MILLER, ESQUIRE PA I.D. #209679 |
| Defendants. | ELECTRONICALLY FILED |
| | **JURY TRIAL DEMANDED** |

## SECOND AMENDED COMPLAINT

AND NOW, comes the plaintiff, SOUTHERSBY DEVELOPMENT CORPORATION ("plaintiff"), by and through its attorneys, MEYER, DARRAGH, BUCKLER, BEBENEK, & ECK, P.L.L.C., filing its Second Amended Complaint, averring as follows:

### THE PARTIES

1.      The plaintiff, Southersby, is a Pennsylvania corporation duly organized and existing under the laws of the Commonwealth of Pennsylvania with a principal place of business located at 245 Summerlawn Drive, Sewickley, Pennsylvania 15143.

2.      Defendant Borough of Jefferson Hills (hereinafter "Jefferson Hills" or "Borough") is a municipal corporation organized and existing under the laws of the Commonwealth of Pennsylvania.

P0924008.2

3.     Defendant William L. McVicker, Sr. ("McVicker") is an individual believed to reside at 113 Garden Drive, Apartment E, Pittsburgh, Pennsylvania 15236.

## FACTUAL BACKGROUND

4.     McVicker was employed by defendant Jefferson Hills in an official capacity as public works director, public service coordinator, zoning officer, building code inspector, road department director, fire marshal, and possibly other unknown positions whereby he had the duty to interpret, apply and enforce Borough ordinances and code, and create and enforce Borough policy.

5.     Upon information and belief, McVicker was dismissed from his position as an employee and official of Jefferson Hills in or around September, 2008.

6.     Southersby owns property within the municipal boundaries of Jefferson Hills approved for residential development and referred to as Patriot Pointe, and includes subdivisions referred to as Patriot Pointe Phase I, II, and III (collectively referred to as "Patriot Pointe").

7.     Southersby purchased and developed the property encompassed by Patriot Pointe for the purpose of selling the individual lots of the development for profit.

8.     On or about June 14, 2004, Jefferson Hills and Southersby entered into a contract titled Developer's Agreement for the planned development of Patriot Pointe Phase

2

I.  (A true and correct copy of the June 14, 2004 developer's agreement is attached hereto as Exhibit "A.").

9.      On or about July 27, 2005, Jefferson Hills and Southersby entered into a contract titled Developer's Agreement for the planned development of Patriot Pointe Phase II.  (A true and correct copy of the July 27, 2005 developer's agreement is attached hereto as Exhibit "B.").

10.      On or about May 21, 2009, Southersby requested that Jefferson Hills forward a draft of the Developer's Agreement for Patriot Pointe Phase III for Southersby's review and approval so that Southersby could promptly begin construction and installation of the infrastructure of Phase III and selling the lots before the end of the customary home buying season.  (A true and correct copy of Southersby's May 21, 2005 correspondence is attached hereto as Exhibit "C").

11.      Jefferson Hills did not provide a draft of the Developer's Agreement for Patriot Pointe Phase III until June 27, 2009, which was rejected by Southersby because it contained unreasonable and unlawful provisions regarding a general $200 per lot "recreation donation," payment of storm sewer tapping fees, and waiver of Southersby's constitutional right to a jury trial.

12.      On August 4, 2009, the Borough forwarded a revised draft of the Patriot Pointe Phase III Developer's Agreement, which Southersby signed and hand-delivered to

the Borough on Thursday, August 13, 2009, along with a check for payment of the Phase III engineering inspection fees.

13.     The Developer's Agreement for Patriot Pointe Phase III was not executed by Jefferson Hills until August 24, 2009, which delayed Southersby's commencement of construction of the infrastructure for Patriot Pointe Phase III and delayed the selling of the Phase III lots.

14.     On or about August 16, 2010, Southersby submitted an application for preliminary approval of a subdivision plan for Patriot Pointe Phase III-B ("Phase III-B"), which consists of six (6) lots.

15.     On January 10, 2010, almost five months after Southersby submitted its application for preliminary approval, the Borough Council voted unanimously to deny preliminary approval of Phase III-B.

16.     At all times relevant hereto, Jefferson Hills acted or failed to act by and through its agents, servants and employees within the course and scope of their agency or employment.

## COUNT I
## FOURTEEN AMENDMENT - DENIAL OF EQUAL PROTECTION
### Southersby Development Corp. v. Borough of Jefferson Hills
### and William L. McVicker

17.     Paragraphs 1 through 16 of Southersby's Second Amended Complaint are incorporated by reference herein as though fully set forth at length.

18.     42 U.S.C. § 1983 provides that, "Every person who, under color of any statute, ordinance, regulation, custom, or usage of any State or Territory or the District of Columbia, subjects or causes to be subjected, any citizen of the United States or other person with the jurisdiction thereof to the deprivation of any rights, privileges, or immunity secured by the Constitution and laws shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress."

19.     The Equal Protection Clause of the Fourteenth Amendment to the United States Constitution provides that no state shall "[d]eny to any person within its jurisdiction the equal protection of the laws."

20.     Residential property developments within the boundaries of Jefferson Hills, referred to as Chamberlain Ridge, Scenery Hill Phase III, Woods of Jefferson Hills Phase III and Castor Farms were developed at or around the same time as Patriot Pointe, and are similarly situated to Patriot Pointe.

21.     Upon information and belief, Chamberlain Ridge, Scenery Hill Phase III, Woods of Jefferson Hills Phase III and Castor Farms were developed by companies owned and operated by residents of Jefferson Hills.

22.     Jefferson Hills, by and through its officials, employees and agents, and McVicker, in his individual and various official capacities, under color of state law, have intentionally, or with reckless indifference to Southersby's constitutionally protected rights, enforced Borough ordinances and processes and state law against Southersby in a selective manner that is wholly arbitrary, irrational, and capricious such that Southersby was treated differently, without a legitimate government purpose, from other similarly situated individuals and land developers, including those developers specifically described herein.

23.     The unequal and discriminatory treatment of Southersby by the defendants, as described herein, includes, but is not limited to, the following particulars:

  a.     Defendants selectively applied borough road specifications and standards against Southersby in installing the infrastructure of Patriot Pointe Phases I and II that were not applied to the Chamberlain Ridge, Scenery Hill Phase III, Woods of Jefferson Hills Phase III or Castor Farm developments before acceptance of the roads by Jefferson Hills;

  b.     Southersby was subjected to unreasonably stringent inspection by Jefferson Hills and McVicker, and required to pay for engineering activities and charges for Patriot Pointe Phases I and II that were not required of other similarly situated individuals and land developers, including the developers of Chamberlain Ridge, Scenery Hill Phase III, Woods of Jefferson Hills Phase III and Castor Farms;

c.       Southersby was required to conduct and pay for density testing and core sampling during road installation for Patriot Pointe Phases I and II, which was not required of other similarly situated land developers, including the developers of Chamberlain Ridge, Scenery Hill Phase III, Woods of Jefferson Hills Phase III and Castor Farms;

d.       Defendants conditioned acceptance of Patriot Pointe's master plan on the installation of storm sewers for on-lot water collection in the front of the building lots of Patriot Point Phase II, including low-side lots, which made it necessary to install storm inlets with a height of approximately 10 to 15 feet and use a trench box during excavation, despite Southersby's engineer's demonstration that such storm sewers would be more appropriately placed in the rear of low-side lots. Yet, other similarly situated developers, including the developers of Chamberlain Ridge and Scenery Hill Phase III, were permitted to install storm swales in the rear of low-side lots thereby allowing storm sewer inlet placements at a height of only 4 to 5 feet, or were not required to install any storm sewers whatsoever for on-lot water collection;

e.       Southersby was charged excessive fees for inspection, engineering activities, municipal legal fees, density testing, core sampling, punch list, and bond issues in relation to the dedication and acceptance of the infrastructure of Patriot Pointe Phases I and II. Yet, other similarly situated developers, including the developers of Chamberlain Ridge, Scenery Hill Phase III, Woods of Jefferson Hills Phase III and Castor Farms, were not charged any fees or were charged fees substantially less than those charged to Southersby;

f.       Defendants demanded Southersby go through the process of dedicating an access road called Independence Drive a second time even though Jefferson Hills had already accepted the dedication of Independence Drive and Southersby had satisfied all obligations for dedication and acceptance;

g.       Defendants attempted to arbitrarily revoke a sign permit issued to Southersby for placement of a sign at the entrance of an access road to Patriot Point Phase II called Independence Drive under the premise that the entrance signs were located in a private right-of-way. Defendants knew that the entrance sign was properly located in a public right-of-way and that they did not have cause to revoke the sign permit, and no such action was taken against other similarly situated individuals or developers, including Jefferson Estates whose entrance signs are also located within a similar right-of-way;

h.    Defendants, under false pretenses and with the intent to cause financial harm to Southersby, unlawfully and arbitrarily attempted to draw on the funds of Southersby's bond for completion of an access road to Patriot Point Phase II named Independence Drive in a manner and procedure not applied to other similarly situated individuals and developers, and knowing they did not have proper cause to do so;

i.    The Borough required Southersby to develop a grouting plan for Patriot Pointe Phases I and II, have a third party review the plans, and obtain bonds for the costs of grouting Phases I and II, but, upon information and belief, the developers of Scenery Hill Phase III, Chamberlain Ridge, Woods of Jefferson Hills Phase III and Castor Farms were not required to develop such plans, obtain bonds for grouting, nor incur the costs associated with these activities;

j.    McVicker, with the intent to cause financial harm to Southersby, wrongfully interfered with Southersby's business and contractual relationship with NVR, Inc. (d/b/a Ryan Homes) in performing construction at Patriot Pointe by threatening to withdraw Ryan Homes' building permits, not issue or delay the issuance of building permits and/or issue stop work orders if Southersby was allowed to work on NVR, Inc.'s home sites;

k.    Upon information and belief, McVicker made frivolous complaints against Southersby to the Allegheny County Conservation District, an agent for the Department of Environmental Protection Agency, causing Southersby to undergo unnecessary inspections; however, no complaints were made or inspections conducted against similarly situated developers, including Castor Farms;

l.    In negotiating the Developer's Agreement for Patriot Pointe Phase III, the Borough unlawfully demanded: (1) Southersby pay a general "recreation donation" of $200 per lot to the Borough for Patriot Pointe Phase III; (2) Southersby pay storm sewer tap fees, even though the Borough already acknowledged in other litigation that it owed Southersby reimbursement of those tap fees; and (3) that Southersby waive its constitutional right to a jury trial.  Although the Borough ultimately agreed to remove these items, the Borough knew Southersby would not agree to its unlawful demands, and intended to cause further delay in the development and construction of Patriot Pointe Phase III;

m.    The Borough has intentionally delayed the completion and execution of a Developer's Agreement for Patriot Pointe Phase III knowing that Southersby is not permitted to begin the development, construction,

and sale of Patriot Pointe Phase III until the Developer's Agreement is executed, which has resulted in significant financial harm to Southersby and harmed Southersby's business relationship with NVR, Inc. d/b/a Ryan Homes;

n.   The Borough inexplicably refused to proceed in accordance with its agreement to include a sanitary sewer tapping fee reimbursement provision in the Developer's Agreement for Patriot Pointe Phase III that would allow Southersby to recoup the costs of constructing the sanitary sewer lines in Phase III, which sewer lines, ultimately, will become property of the Borough upon dedication and acceptance;

o.   On or about May 19, 2009, Borough engineer, Joseph Sites, in an attempt to shutdown Patriot Pointe's operations, filed an unsubstantiated complaint with the Allegheny County Conservation District alleging that Southersby was "working in a stream channel" without a permit in violation of Pennsylvania law. In fact, Southersby did have an emergency permit issued by the Pennsylvania Department of Environmental Protection to conduct earthmoving activities to repair a slope due to an impending landslide condition caused by unnatural soil erosion, which erosion is part of Southersby's negligence claim in this suit. Conversely, the Borough and its engineers took no action and did not file any complaints against the developers of Castor Farms in 2007 after learning of unlawful earthmoving activities conducted by those developers without a permit and the existence of slope movement that caused damage to Ridge Road in Jefferson Hills; and,

p.   The Borough, on January 10, 2011, denied Southersby's application for preliminary approval of the Patriot Pointe Phase III-B subdivision plan and request for exception to Borough Ordinance No. 685 to permit a sanitary sewer system using grinder pumps and a force main line when the Borough has approved such exceptions previously to other similarly situated individuals or developers, including, but not limited to, the developer of Hunters Field and for property now owned by a Borough Council member.

24.   Defendants' unequal and unlawful actions against Southersby, as described herein, were motivated by bias against Southersby as a non-resident developer and intended to financially injure Southersby in retaliation for exercising its constitutionally-

protected right to contest Jefferson Hill's attempts to charge and collect certain legal escrow fees, storm sewer fees and sanitary sewer tap fees relative to the development of Patriot Pointe.

25.    Upon information and belief, McVicker and other agents of Jefferson Hills have personal or business relationships with land developers or individuals who reside in the Borough and who stand to gain a profit or benefit from the failure of the Patriot Pointe development or from Southersby refraining from conducting further land development in the Borough.

26.    The defendants engaged in corruption and self-dealing such that their unlawful actions described herein were motivated by an intent to harm Southersby, collect excessive or unwarranted fees, and interfere with the development of Patriot Pointe for the purpose of benefitting, financially or otherwise, the defendants, or resident land developers or individuals associated with the defendants, and causing the failure or foreclosure of Patriot Pointe.

27.    Defendants' unequal and unlawful actions against Southersby were also motivated by ill will, personal animus, malice or an intent to harass held by McVicker and other agents of Jefferson Hills due to their personal or business relationships with Borough residents who opposed the activities of Southersby or had legal disputes with Southersby

relative to Patriot Pointe, such as residents Albert and Tracy Betler, and those who sought to benefit financially from the foreclosure of Patriot Point or impede its progress.

28.    Upon information and belief, it was a policy, practice or custom of Jefferson Hills to allow McVicker and other officials and agents to selectively and arbitrarily enforce state law and borough ordinances and processes, and charge unequal fees, without adequate guidelines and supervision, or punishment for such unreasonable activities, which was the direct cause of Southersby's injuries and damages.

29.    McVicker is a policymaker of Jefferson Hills whereby his selective, arbitrary, irrational and capricious enforcement of borough ordinances and processes constitutes a policy, practice or custom of Jefferson Hills, which was the direct cause of Southersby's injuries and damages.

30.    By acting in an arbitrary, irrational and capricious manner relative to Southersby, and doing so intentionally or with reckless indifference to Southersby's constitutionally protected rights, Jefferson Hills and McVicker have denied Southersby its right to equal protection of the laws under the Fourteenth Amendment of the United States Constitution.

31.    As a direct result of the egregious and unlawful acts of Jefferson Hills and McVicker, Southersby has suffered damages, including, but not limited to, substantial loss

of profit and revenues, loss of good will, and increased expenses from overhead, development loan interest, fees, labor, supplies and material costs, and other costs, including attorney fees and costs, that it would not have incurred if not for the unlawful conduct of the defendants.

32.     McVicker's arbitrary, irrational and capricious actions relative to Southersby were intentional, malicious, or committed with reckless indifference to Southersby's constitutionally protected rights whereby an award of punitive damages against McVicker, in his individual capacity, is appropriate.

33.     Pursuant to 42 U.S.C. § 1988(b), Southersby asserts its right to recover reasonable attorney fees and costs from the defendants in the event it prevails on its 42 U.S.C. § 1983 claim against defendants.

WHEREFORE, Southersby demands judgment in its favor and against the defendants pursuant to 42 U.S.C. § 1983 for deprivation of Southersby's right to equal protection under the Fourteenth Amendment.

**COUNT II**
**FIRST AMENDMENT - RETALIATION**
**Southersby Development Corp. v. Borough of Jefferson Hills**

34.     Paragraphs 1 through 33 of Southersby's Second Amended Complaint are incorporated herein by reference as though fully set forth at length.

35.     The First Amendment to the United States Constitution, as made applicable

to the states through the Fourteenth Amendment, provides the right of freedom of speech

and to petition the government for redress of grievances shall not be abridged.

36.     On August 16, 2010, Southersby submitted its application for preliminary

approval of a subdivision plan for Patriot Pointe Phase III-B, which consists of six (6) lots.

37.     Borough Ordinance No. 685, Section 610(1) regarding the installation of

sanitary sewers provides:

> Installation.  Sanitary sewers shall be conventional gravity flow
> type and shall not be designed to be in fill areas.  Only under
> certain conditions approved by the Borough Engineer will
> sanitary sewers be permitted in fill areas.  Pipe installation
> shall comply with Unibell Specifications UNI-B-5-78 and the
> following specifications.

38.     Sections 803 and 804 of the Borough's Subdivision and Land Development

Ordinance provide that a modification or exception to a requirement of the Borough may

be granted if physical conditions of the land make compliance a practical difficulty or

exceptional and undue hardship, or if literal enforcement would result in an unnecessary

hardship, so long as the modification or exception is not contrary to the public interest.

39.     Southersby requested an exception to § 610(1) because a gravity flow type

sewer is not physically or financially practicable for Phase III-B because of the elevation

and topography of the land, and to use such a sewer type would require Southersby to haul

approximately 86,000 cubic yards of land fill into Phase III-B to significantly raise the elevation of the land by 27 feet, the cost of which would exceed the value of the lots of Phase III-B.

40.    Section 610(1) also prohibits, as a general rule, the installation of gravity flow sewers in fill, which precludes Southersby from hauling fill into Phase III-B to raise the elevation of the land to a height sufficient to permit the use of a gravity flow sewer system unless such an exception is approved by the Borough.

41.    Instead of a gravity flow type sewer, Southersby proposed to use a pressurized sanitary sewer system that utilized a force main and grinder pumps.

42.    The Borough has granted a modification or exception to the requirement of a conventional gravity sanitary sewer to other individuals or developers when a gravity flow type sewer was not a reasonable option, and several properties in the Borough use grinder pumps and/or force main lines.

43.    Southersby and its engineer, Matthew Horton of Horton Engineering, met with the Borough Planning Commission and the Borough's engineer on several occasions to work out the details of the proposed sanitary sewer system for Phase III-B in seeking preliminary approval of the Borough.

44.     Southersby provided all information necessary for preliminary approval, and Southersby also provided all revised plans, plats, and reports requested by the Borough.

45.     On or about November 22, 2010, the Borough Planning Commission voted against recommending preliminary approval of Phase III-B, and did not prepare recommendations to the Borough Council regarding the general acceptability of installing a low pressure sanitary sewer system for Phase III-B.    No reason was given by the Borough Planning Commission for the vote.

46.     In response to the Borough Planning Commission's failure to recommend preliminary approval or provide any recommendations to the general acceptability of a low pressure sanitary sewer system for Phase III-B, Southersby's engineer, on December 17, 2010, contacted the Borough's consulting engineer, Joseph Sites of Gateway Engineers, Inc., to discuss what additional information was necessary to appease the Borough's concerns about the proposed sanitary sewer system.

47.     On December 30, 2010, Southersby's engineer provided the Borough with additional detailed information about the design of the proposed pressure sewer system, including, but not limited to. pressure calculations and specifications for the laterals, pumps, and force main, and operating instructions for the force main.

48.     A public "workshop meeting" with the Borough Council was scheduled for January 5, 2011, at which time Southersby's plan for Patriot Pointe Phase III-B and proposed pressured sanitary sewer system were to be discussed with Borough Council.

49.     In advance of the January 5, 2011 workshop meeting, Southersby's counsel, Harlan Stone, Esq., sent a letter to the Borough Manager, Doug Arndt, the Borough Engineer, and the Borough Solicitor's office to inform the Borough that Southersby would have a representative of the manufacturer of the sewer system proposed by Southersby attend the meeting to address any concerns the Borough Council may have with regard to the operation and maintenance of the system.  (A true and correct copy of the January 4, 2011 letter of Harlan Stone, Esq. is attached as Exhibit "D").  The letter also stated that the Borough previously made an exception to its gravity sewer requirement when the Borough approved the construction of a force main sewer system for the Hunter's Field development.  (See id.).

50.     On January 5, 2011, Southersby's president, Timothy Murphy, Southersby's legal counsel, Harlan Stone, Esq., Southersby's engineer, Matthew Horton, and a representative of the manufacturer of Southersby's proposed sewer system all attended the workshop meeting with Borough Council to address any questions or concerns the Borough Council had regarding the proposed pressure-based sewer system, and to provide any additional information requested by the Borough Council.

51.     During the January 5, 2011 meeting, the Borough Engineer, Ruthann Omer, represented that Southersby's request to utilize a force main and grinder pumps in its sanitary sewer plan for Phase III-B was reasonable and such exceptions to the Borough's gravity sewer requirement have been granted in the past by the Borough.

52.     Furthermore, to alleviate any remaining concerns the Borough Council may have had with regard to the proposed sewer system, Southersby's legal counsel, Harlan Stone, Esq., suggested that any residual issues or concerns the Borough had could be made conditions to final approval, and Southersby was willing to comply with any such conditions set by the Borough.

53.     The Borough Council's vote for preliminary approval of Phase III-B and the request for an exception to use a pressure-based sewer system was scheduled to take place at the Borough Council's January 10, 2011 regular meeting, and was listed as issue no. 9 on the meeting agenda.

54.     Moments prior to the beginning of the January 10, 2011 meeting, the Borough Engineer informed Southersby's engineer, Matthew Horton, that the Borough Council may ask about a cost analysis for installing a gravity flow sanitary sewer system in Phase III-B, and that Southersby's engineer should be prepared to supply such cost information to the Borough Council.

55.    During the previous meetings with the Borough Planning Commission, and with the Borough Council at the January 5, 2010 workshop meeting, the Borough focused on the quality and operation of the pressure-based sewer system, and had never requested a cost estimate for a plan to fill the property in Phase III-B to an elevation sufficient for a gravity flow type sewer because the Phase III-B plans clearly showed that a conventional gravity flow sewer was not practicable due to the topography and natural grade of the land.

56.    Indeed, the Borough Planning Commission and Borough Engineer would not have requested that Southersby proceed with revising its subdivision plans with regard to the proposed sewer system or ask for more detailed information on the functionality of the proposed sewer system if there was a legitimate question about the practicality of installing a conventional gravity flow sewer system as opposed to the pressure sewer system proposed by Southersby.

57.    Nonetheless, Southersby and its engineer prepared the estimated cost analysis as suggested by the Borough Engineer so that Southersby could answer the Borough Council's expected questions concerning (1) the cost of using fill to raise the elevation of land in Phase III-B to a height sufficient to permit a gravity sewer system, (2) the obvious hardship created by the gravity flow sewer requirement, and (3) the impracticality of installing a gravity flow sewer because of its cost.

P0924008.2                                                           18

58.     At the January 10, 2011 Borough Meeting, when the granting/denial of Southersby's application for preliminary approval for Phase III-B became the agenda topic before the Borough Council, Southersby's engineer, Matthew Horton, stood up to the podium to address the Borough Council.

59.     The Borough Council indicated that it would vote for denial of preliminary approval because no cost analysis for a gravity flow type sewer had been provided, even though the Borough never requested such an analysis at the January 5, 2011 meeting or any time before, and the Borough Council did not ask any questions about the costs of a gravity flow sewer system at the January 5, 2011 meeting.

60.     When Southersby's engineer, Matthew Horton, attempted to inform the Borough Council that Southersby had a cost analysis and estimate prepared and begin discussing said estimate, the Borough Council abruptly cut Mr. Horton off from speaking and stated that he could not address the Borough Council on this subject.

61.     Southersby's president, Timothy Murphy, then stood up and stated that Southersby's application for preliminary approval for Phase III-B was the agenda topic before the Borough Council, and Southersby had a right to speak and address the Borough Council on this topic.

62.     A Borough Council member then told Mr. Murphy that he was not allowed to address the Borough Council and instructed Mr. Murphy not to speak.

63.     When Mr. Murphy responded in disagreement to the Borough's suppression of Southersby's speech on the newly raised cost analysis issue, a Borough Council member or the Borough Solicitor instructed two Borough police officers who were present at the meeting to arrest or physically remove Mr. Murphy from the meeting.

64.     As the two police officers approached, Mr. Murphy picked up his belongings and walked out of the meeting.

65.     Without giving Southersby an opportunity to address the new cost analysis issue raised by the Borough Council, the Borough Council, after five months of Southersby working with the Borough to fulfill all requirements for preliminary approval, voted unanimously to deny preliminary approval of Phase III-B and deny Southersby's request for an exception to Borough Ordinance No. 685, Section 610(1).

66.     Borough Manager, Doug Arndt, sent Southersby a letter dated January 12, 2011 stating that the reason the Borough denied preliminary approval of Phase III-B was because it did not comply with Ordinance No. 685, Section 610(1), which requires gravity flow type sanitary sewers. (A true and correct copy of the January 12, 2011 letter is attached as Exhibit "E").

67.    The January 12, 2011 letter also stated that Southersby's request for modification of Section 610(1) to permit use of a sewer design with grinder pumps and a non-gravity force main was denied for the following reasons:

      a.     that alternatives to the non-gravity sewer system have not been fully studied and compared to the proposed system and a hardship has not been adequately documented;

      b.     that acceptance of the force main system and reliance on grinder pumps on individual lots create greater maintenance problems for homeowners and the Borough.

(See id.).

68.    The stated reasons of the Borough for denying preliminary approval of Phase III-B and the requested modification of Section 610(1) are fabrications, and pretext for the Borough's unlawful retaliation against Southersby for engaging in the constitutionally protected conduct of filing a lawsuit against the Borough and openly protesting the Borough's unlawful actions described herein.

69.    The Borough's contention that the acceptance of the force main system and grinder pumps would create greater maintenance problems for homeowners and the Borough is not even supported by the information supplied by Southersby and the sewer system manufacturer.

70.    Previously, in 2008, Southersby filed a lawsuit against the Borough in the Court of Common Pleas of Allegheny County, docket No. G.D. 08-020458, claiming that

21

the Borough violated the Pennsylvania Municipalities Planning Code and Municipal
Authorities  Act by collecting a $1,500.00 sanitary sewer tap fee for lots in Patriot Pointe
without reimbursing part of the tap fee to Southersby, who incurred the costs of
constructing the sanitary sewer facilities in Patriot Pointe.

71.	The Borough Solicitor, Michael Adams, Esq., is the attorney representing the
Borough in the aforementioned tap fee lawsuit, and also is the legal counselor of the
Borough on its decision to deny preliminary approval of Phase III-B.

72.	On July 29, 2010, the Honorable Joseph M. James of the Court of Common
Pleas of Allegheny County granted summary judgment in favor of Southersby and against
the Borough holding that the Borough was required to pay $1,180.17 of its $1,500.00 tap
fee to Southersby for each tap fee collected in Patriot Pointe, and a money judgment was
entered in the amount of $115,656.66.

73.	The Borough has appealed the order granting summary judgment, and it is
currently pending before the Pennsylvania Commonwealth Court.

74.	Of course, Southersby also has the lawsuit sub judice pending against the
Borough, which was initially filed in the Court of Common Pleas of Allegheny County in
2008.

75.     The Borough's denial of Southersby's application for preliminary approval of Phase III-B and request to modify Section 610(1) to permit a non-gravity force main sewer system with grinder pumps and suppression of Southersby's speech at the January 10, 2011 Borough Council meeting was retaliation for Southersby exercising its constitutionally protected right to petition the court for relief from the unlawful or actionable conduct of the Borough through the filing of lawsuits, and retaliation for Southersby exercising its First Amendment right to protest the Borough's unlawful actions and the arbitrary and unequal treatment of Southersby.

76.     The Borough has total control over the land development activities in the Borough through enforcement of its ordinances and approval processes--activities that involve substantial amounts of money for a developer such as Southersby--and the Borough has the power to dictate whether a development will be financial success or failure depending on the manner in which it enforces its laws, the length of time it takes to review and approve plans, applications, contracts, and formal requests, and whether it ultimately approves or denies such plans, applications, contracts, and formal requests.

77.     Under these circumstances, the retaliatory conduct of the Borough described herein would deter a person or corporation of ordinary firmness in Southersby's position from engaging in, attempting to engage in, or continue engaging in such constitutionally protected conduct.

78.     The retaliatory conduct of the Borough, by and through the Borough Council members, Borough Solicitor and/or other officials, as described herein, was committed under color of state law, with intentional or reckless indifference to Southersby's constitutionally protected rights, and constitutes a practice, policy, or custom of the Borough.

79.     The retaliatory conduct of the Borough, as described herein, has caused Southersby to suffer past and on-going deprivations of its constitutional rights, as well as economic and compensatory damages and losses, including, but not limited to, the potential loss of sale of lots in the proposed Patriot Pointe Phase III-B subdivision.

80.     The Borough's conduct committed in retaliation against Southersby for exercising or attempting to exercise Southersby's constitutional rights, as alleged herein, have deprived Southersby of its First Amendment right.

81.     Pursuant to 42 U.S.C. § 1988(b), Southersby asserts its right to recover reasonable attorney fees and costs from the defendants in the event it prevails on its 42 U.S.C. § 1983 claim against the Borough.

82.     Southersby also requests that the Borough be enjoined from further retaliation against Southersby for exercising its First Amendment rights.

WHEREFORE, Southersby demands judgment in its favor and against the Borough pursuant to 42 U.S.C. § 1983 for deprivation of Southersby's rights under the First Amendment, and such further relief as this Court deems just and proper.

## COUNT III
## FIRST AMENDMENT - RESTRAINT OF SPEECH
### Southersby Development Corp. v. Borough of Jefferson Hills

83.     Paragraphs 1 through 82 of Southersby's Second Amended Complaint are incorporated herein by reference as though fully set forth at length.

84.     The First Amendment to the United States Constitution, as made applicable to the states through the Fourteenth Amendment, provides that the right of freedom of speech and to petition the government for redress of grievances shall not be abridged.

85.     The Borough's act of precluding Southersby's engineer and president from speaking and addressing the Borough Council at the January 10, 2011 public Borough Council meeting with regard to the newly raised and arbitrary demand for a cost analysis of using fill to raise the elevation of property in Phase III-B to a height sufficient to allow a gravity flow type sanitary sewer system, and the act of directing the forced removal of Southersby's president from the Borough Council meeting, constitute an unlawful restraint of Southersby's right to free speech under the First Amendment of the U.S. Constitution.

86.    The Borough's unlawful suppression of Southersby's speech described herein was based on both the content and viewpoint of Southersby's speech.

87.    Southersby lawfully exercised its right to speak at the January 10, 2011 meeting by waiting until the topic of its application for preliminary approval of Phase III-B was the agenda item before the Borough Council.  This was the proper and reasonable time and place for Southersby to speak and address the Borough Council on this topic.

88.    Prior to Southersby attempting to speak, other persons were permitted to speak and address the Borough Council during the January 10, 2011 meeting when their agenda topic was before the Borough Council.

89.    Furthermore, at previous regular meetings of the Borough Council, Southersby was permitted to speak and address the Borough Council when a topic concerning Southersby's development activities was the agenda item before the Borough Council at the meeting, which made the Borough's conduct at the January 10, 2011 meeting particularly surprising and indicative of the Borough's intent to unlawfully suppress Southersby's speech so the Borough's pretextual reasons for denying preliminary approval of Phase III-B would not be undermined.

90.    The Borough's restraint of Southersby's right to free speech, by and through the Borough Council, Borough Solicitor, and/or other officials, as described herein, was

committed under color of state law, with intentional or reckless indifference to Southersby's constitutionally protected rights, and constitutes a practice, policy, or custom of the Borough.

91.    The Borough's restraint of Southersby's speech, as described herein, has caused Southersby to suffer a deprivation of its First Amendment rights, as well as economic and compensatory damages and losses.

92.    Pursuant to 42 U.S.C. § 1988(b), Southersby asserts its right to recover reasonable attorney fees and costs from the defendants in the event it prevails on its 42 U.S.C. § 1983 claim against defendants.

93.    Southersby also requests that the Borough be enjoined from further suppressing Southersby from exercising its First Amendment rights in this manner.

WHEREFORE, Southersby demands judgment in its favor and against the Borough pursuant to 42 U.S.C. § 1983 for deprivation of Southersby's rights under the First Amendment, and such further relief as this Court deems just and proper.

## COUNT IV
## BREACH OF CONTRACT
### Southersby Development Corp. v. Borough of Jefferson Hills

94.     Paragraphs 1 through 93 of Southersby's Second Amended Complaint are incorporated by reference herein as though fully set forth at length.

95.     Jefferson Hills and Southersby entered into contracts for the development of property located within the boundaries of Jefferson Hills referred to as Patriot Pointe Phase I and II on June 14, 2004 and July 27, 2005, respectively. (See Exhibits A and B, collectively referred to as "Development Agreements").

96.     Pursuant to the Development Agreements, Jefferson Hills implicitly covenanted to perform in good faith and deal fairly with Southersby during performance of the Development Agreements.

97.     Jefferson Hills breached the Development Agreements by acting in bad faith and undertaking the actions described herein.

98.     As a proximate result of Jefferson Hills' breach, Southersby's progress in developing Patriot Pointe was severely hampered, the sale of lots in Patriot Pointe was substantially delayed, and Southersby's business relationships with NVR, Inc. and other business partners and service providers were irreparably harmed.

99.    As a proximate result of Jefferson Hills' breach, Southersby has incurred damages including, but not limited to, loss of profit and revenues, diminution in property value, loss of good will, and increased expenses for overhead, development loan interest, fees, labor, supplies and material costs, and other costs, including attorney fees and costs, that it would not have incurred if not for Jefferson Hills unlawful breach of the Development Agreements.

WHEREFORE, Southersby claims damages in an amount in excess of $25,000, exclusive of interest and costs, and demands judgment in its favor and against the defendant, Borough of Jefferson Hills.

Respectfully submitted,

MEYER, DARRAGH, BUCKLER,
BEBENEK & ECK, P.L.L.C.

By: /s/ James D. Miller
PAUL R. ROBINSON, ESQUIRE
JAMES D. MILLER, ESQUIRE

Counsel for plaintiff, Southersby
Development Corporation

U.S. Steel Tower, Suite 4850
600 Grant Street
Pittsburgh, PA  15219
(412) 261-6600
(412) 471-2754 - Fax
Email:  probinson@mdbbe.com
          jmiller@mdbbe.com

P0924008.2                                    29

## PROOF OF SERVICE

This is to certify that a true and correct copy of the foregoing pleading has been

served upon all parties by electronic filing on the date listed below:

Suzanne B. Merrick, Esquire
Thomas, Thomas & Hafer, LLP
One Oxford Centre
301 Grant Street, Suite 1150
Pittsburgh, PA 15219
(*Counsel for Borough of Jefferson Hills*)

Philip Sbrolla, Esquire
Carolyn C. Batz, Esquire
Cipriani & Werner, P.C.
650 Washington Road, Suite 700
Pittsburgh, PA 15228
(*Counsel for Willliam L. McVicker*)

MEYER, DARRAGH, BUCKLER,
BEBENEK & ECK, P.L.L.C.

Date: __February 11, 2011__          By: /s/ James D. Miller _____
                                        PAUL R. ROBINSON, ESQUIRE
                                        JAMES D. MILLER, ESQUIRE

P0924008 2