IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| SOUTHERSBY DEVELOPMENT CORPORATION, | ) ) | |
| Plaintiff, | ) ) | |
| vs. | ) ) | Civil Action No. 09-208 Magistrate Judge Maureen P. Kelly |
| BOROUGH OF JEFFERSON HILLS; WILLIAM L. McVICKER, in his individual and official capacity, | ) ) ) | Re: ECF Nos. 96, 101 |
| Defendants. | ) | |

## OPINION

**KELLY, Magistrate Judge**

Plaintiff, Southersby Development Corporation ("Southersby"), a real estate developer,

filed this action against the Borough of Jefferson Hills ("the Borough") and William L. McVicker

("McVicker") (collectively "Defendants"), a former Borough employee, pursuant to 42 U.S.C. §

1983 ("Section 1983"), alleging that Defendants violated its right to equal protection under the

Fourteenth Amendment and its right to free speech under the First Amendment relative to the

development of a residential property known as Patriot Pointe.   Pending before the Court is a

Motion for Summary Judgment submitted by Defendant McVicker and a Motion for Partial

Summary Judgment submitted by the Borough.   ECF Nos. 96, 101.   For the reasons that follow,

both Motions will be granted in part and denied in part.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

Southersby purchased property within the Borough in order to develop a residential

community known as Patriot Pointe - Phases I, II and III.   ECF No. 60, ¶¶ 6, 7.   In the spring of

2009, when the time came to proceed with Phase III of the project, the working relationship

between Southersby and the Borough began to deteriorate. In particular, tension arose when the Borough delayed in returning the Phase III Developer's Agreement ("the Agreement"). Although Southersby requested a draft of the Agreement from the Borough on May 21, 2009, it did not receive it until June 27, 2009. Id. at ¶¶ 10-11. Southersby, however, objected to what it has described as "unreasonable and unlawful" provisions in the Agreement, including the Borough requiring Southersby to waive its right to a jury trial. Id. at ¶ 11. The Borough subsequently agreed to remove the offending provisions, but did not execute the Agreement until August 24, 2009. Id. at ¶ 12. The delay in executing the Agreement, coupled with the Borough's denial of Southersby's application for preliminary approval of Phase III-B, prevented Southersby from proceeding with the project to its financial detriment. Id. at ¶¶ 14-15.

Southersby also contends that the Defendants have selectively applied Borough ordinances and road specifications; imposed unreasonably stringent inspection and testing specifications; and imposed fees not required of other developers. It also claims unfair and arbitrary treatment by Defendants in connection with an access road, a sign permit, and a grouting plan. Id. at ¶¶ 22, 23, 28. Defendant McVicker, individually, is alleged to have interfered with homebuilders' permits and to have lodged frivolous complaints with the Allegheny County Conservation District ("ACCD"). Id. at ¶ 23. As well, Southersby alleges that McVicker and "other agents of Jefferson Hills" had personal or business relationships with other land developers and Borough residents who opposed or stood to benefit from blocking Phase III development. Id. at 25. Through these relationships, Defendants are said to have engaged in corruption and self-dealing. Id. at 26.

Southersby initiated this action on September 12, 2008, by filing a Praecipe for Writ of

Summons in the Court of Common Pleas of Allegheny County, Pennsylvania.    Southersby filed

its Complaint on January 22, 2009, and on February 19, 2010, Defendants removed the case to

this Court pursuant to 28 U.S.C. § 1446.    In response to a Motion to Dismiss filed by

Defendants, in which they sought dismissal of Southersby's substantive due process claim

brought at Count II of the Complaint, Southersby filed an Amended Complaint on August 20,

2009.    Finding that Southersby had failed to cure the deficiencies as to that claim, the Court

granted Defendants' renewed Motion to Dismiss in an Order dated April 20, 2010.    ECF No. 32.

Southersby subsequently filed a Second Amended Complaint on February 11, 2011, in which it

brings claims against the Borough and McVicker under the equal protection clause of the

Fourteenth Amendment (Count I); claims against the Borough for retaliation and restraint of

speech under the First Amendment (Counts II and III, respectively); and a claim for Breach of

Contract against the Borough (Count IV).    ECF No. 60.    Defendants filed Answers to the

Second Amended Complaint on February 24, 2011.    ECF Nos. 62, 63.

On October 3, 2011, following the resolution of an elongated discovery dispute,

Defendant McVicker filed a Motion for Summary Judgment, ECF No. 96, and the Borough filed

a Partial Motion for Summary Judgment.    ECF No. 101.    These motions are now ripe for

review.

## II.    STANDARD OF REVIEW

Summary judgment is warranted only where "the pleadings, the discovery and disclosure

materials on file, and any affidavits show that there is no genuine issue as to any material fact and

that the movant is entitled to a judgment as a matter of law."    Fed. R. Civ. P. 56(c).    The

moving party bears the initial burden of demonstrating to the court that there is an absence of

3

evidence to support the non-moving party's case. <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322 (1986). <u>See</u> <u>Conoshenti v. Public Service Electric & Gas Company</u>, 364 F.3d 135, 140 (3d Cir. 2004). When the moving party has met this burden, the burden then shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e) (2). The mere existence of some evidence favoring the non-moving party, however, will not defeat the motion. There must be enough evidence with respect to a particular issue to enable a reasonable jury to find in favor of the non-moving party. <u>Anderson v. Liberty Lobby</u>, 477 U.S. 242, 248 (1986). <u>See</u> <u>McGreevy v. Stroup</u>, 413 F.3d 359, 363-64 (3d Cir. 2005). In evaluating the evidence at the summary judgment stage, the court must view the facts in the light most favorable to the non-moving party and draw all reasonable inferences in its favor. <u>Matreale v. New Jersey Dep't of Military & Veterans Affairs</u>, 487 F.3d 150, 152 (3d Cir. 2007).

## III.   DISCUSSION

### A.   The Borough's Motion for Partial Summary Judgment

#### 1.   Statute of Limitations

The Borough initially argues that it is entitled to summary judgment in its favor on "several" of Southersby's equal protection claims because they are barred by the applicable statute of limitations. Noting that Southersby has identified sixteen instances of alleged "unequal and discriminatory treatment" in the Second Amended Complaint, the Borough argues that, to the extent the violations identified in paragraphs 23 a, b, c, d, e, h, i and j, are premised on conduct that occurred prior to September 12, 2006, they are untimely.

It is well established that the statute of limitations for Section 1983 claims is governed by the applicable state's statute of limitations for personal-injury claims. <u>Gilarno v. The Borough of</u>

Freedom, 2010 WL 3522112 at *4 (W.D. Pa. Sept. 8, 2010).   See Wallace v. Kato, 549 U.S. 384, 387 (2007).   In Pennsylvania, a personal injury claim must be filed within two years.   42 Pa. C.S. § 5524(2) (2004).   Thus, Southersby's Section 1983 claims are subject to a two year statute of limitations.   Gilarno, 2010 WL 3522112 at *4.

Although the applicable statute of limitations period is governed by state law, federal law dictates when a Section 1983 cause of action accrues.   Wallace, 549 U.S. at 388.   Generally, a cause of action accrues and the statute of limitations begins to run "when the plaintiff knew or should have known of the injury upon which its action is based."   Sameric Corp. of Delaware, Inc. v. City of Philadelphia, 142 F.3d 582, 599 (1998).   That is, "a Section 1983 claim accrues at the time when the injury is sustained" or "'when the plaintiff has a complete and present cause of action.'"   Koehnke v. City of McKeesport, 350 Fed. Appx. 720, 723 (3d Cir. 2009), cert. denied, ___ U.S. ___, 130 S. Ct. 2404 (2010), quoting Wallace, 549 U.S. at 388 (internal quotations and citations omitted).   Moreover, "'[t]he cause of action accrues even though the full extent of the injury is not then known or predictable.'" Wallace, 549 U.S. at 391, quoting 1 C. Corman, Limitations of Actions § 7.4.1, at 526-27 (1991).

As previously discussed, Southersby initiated this action in the Court of Common Pleas of Allegheny County, Pennsylvania on September 12, 2008.   Thus, any claims that accrued prior to September 11, 2006, including many of the claims raised in paragraphs 23 a, b, c, d, e, h, i and j of the Second Amended Complaint, are barred by the two year statute of limitations.

### a.    The Discovery Rule

Southersby does not dispute that the Section 1983 claims set forth in paragraphs 23 a, b, c, d, e, h, i and j of the Second Amended Complaint accrued prior to September of 2006, but

nevertheless argues that the running of the limitations period should be tolled under the discovery rule. See William A. Graham Co. v. Haughey, 646 F.3d 138, 150 (3d Cir. 2011), cert. denied, ___ U.S. ___, 132 S. Ct. 456 (2011) ("we do not think the discovery rule should be read to alter the date on which a cause of action accrues. . . . the discovery rule must instead . . . operate to toll the running of the limitations period after a cause of action has accrued . . . "). Under the discovery rule, "'where the existence of the injury is not known to the complaining party and such knowledge cannot be reasonably ascertained within the prescribed statutory period, the limitations period does not begin to run until the discovery of the injury is reasonably possible.'" Smith v. IMG Worldwide, Inc., 437 F. Supp. 2d 297, 305 (E.D. Pa. 2006), quoting Gatling v. Eaton Corp., 807 A.2d 283, 289 (Pa. Super. 2002). See Vessels v. City of Philadelphia, 2011 WL 4018137 at *6 (E.D. Pa. Sept. 8, 2011), quoting Mest v. Cabot Corp., 449 F.3d 502, 510 (3d Cir. 2006) ("Under the discovery rule, the statute of limitations does not begin to run until 'the plaintiff knows, or reasonably should know, (1) that he has been injured, and (2) that his injury has been caused by another party's conduct'").

Southersby contends that, because it did not receive bills, invoices, inspection reports and other records for similarly situated developers from the Borough until "just prior to April 23, 2008," it did not begin to discover the existence and extent of the inequitable treatment it had suffered at the hands of Defendants until then. Southersby therefore concludes that the statute of limitations for the events at issue should be tolled between the time they accrued and April of 2008, rendering them timely. This Court disagrees.

The gist of Southersby argument is that because they did not receive documentation that other developers had been treated more favorably until April of 2008, they were unaware that it

had suffered an injury.   The issue, however, is not when Southersby discovered that the requirements imposed upon it by the Borough were discriminatory, but rather the issue is when it became aware that it had suffered an injury in the first instance.   See Oshiver v. Levin, Fishbein, Sedran & Berman, 38 F.3d 1380, 1386 (3d Cir. 1994) ("a claim accrues in a federal cause of action upon awareness of actual injury, not upon awareness that this injury constitutes a legal wrong").   See also Podobnik v. U. S. Postal Service, 409 F.3d 584, 590-91 (3d Cir. 2005) (declining to extend the reach of the discovery rule to delay accrual until the plaintiff learned that a legal injury occurred, noting that the plaintiff had not claimed that he was unaware that the USPS had reduced his route on March 10, 1998, which was the only date that an alleged injury occurred).

With respect to the allegations in the Complaint, Southersby was aware in June of 2004 and July of 2005, when the Developer's Agreements for Phases I and II were executed, that it was obligated to use limestone in the construction of its base roadways rather than slag [ECF No. 60, ¶ 23a]; to the extent Southersby was subjected to unreasonably stringent inspections and charged excessive fees prior to September 12, 2006, it was necessarily cognizant of those events as they occurred [ECF No. 60, ¶¶ 23b, e]; it was also aware prior to August of 2006 that it was required to conduct and pay for density testing and core sampling during road installation of Phases I and II [ECF No. 60, ¶ 23c]; it was aware as early as October of 2003 that it was required to install storm sewers in the front of the building at what Southersby claims is an unreasonable depth [ECF No. 60, ¶ 23d]; it was aware in August of 2006 that the Borough allegedly attempted to unlawfully draw on the funds of Southersby's bond for completion of Independence Drive [ECF No. 60, ¶ 23h]; it was aware in June of 2004 and July 2005, by reason of the Developer's

Agreements for Phases I and II, that it was required to develop a grouting plan and obtain bonds for the costs [ECF No. 60, ¶ 23i]; and, finally, it was aware in August of 2006 that McVicker allegedly threatened to withdraw and/or delay issuing building permits [ECF No. 60, ¶ 23j]. Thus, Southersby knew, or reasonably should have known, that these injuries occurred in or before August of 2006 and that they were caused by the Borough.[1]   The mere fact that it did not have documentary evidence that that the Borough's actions may have been discriminatory until 2008 is of no moment.   See Oshiver, 38 F.3d at 1386; Ormsby v. Luzerne Cnty. Dept. of Pub. Welfare Office of Human Servs., 149 Fed. Appx. 60, 63-63 (3d Cir. 2005) (concluding that Section 1983 and 1985 claims accrued when plaintiff learned that she suffered injuries due to defendants' actions, not when she "obtained all of the facts surrounding her claims and realized that the defendant had violated her constitutional and civil rights") (internal quotation marks omitted).   As such, the statute of limitations with respect to these claims is not tolled by the discovery rule and Southersby was obligated to file suit within two years of their occurrence or by August of 2008.   Because Southersby did not initiate this action until September of 2008, to the extent that Southersby's claims set forth in paragraphs 23 a, b, c, d, e, h, i and j of the Second Amended Complaint occurred before September 12, 2006, they are barred by the two year statute of limitations.   Obviously, any claims referenced in these paragraphs that occurred after September 12, 2006, are not precluded.

---

[1]  Indeed, with respect to the storm sewers, Southersby complained to the Borough engineer that it was being treated in a disparate manner as early as August of 2004 and again in November of 2005.   [ECF Nos. 100-3, 100-4]. Thus, Southersby was not only aware that it suffered an injury but was also aware of the legal repercussions as of 2004, yet did not file the instant action for another four years.   See Barnes v. American Tobacco Co., 161 F.3d 127, 136 (3d Cir. 1998), quoting Kingston Coal Co. v. Felton Mining Co., Inc., 456 Pa. Super. 270, 690 A.2d 284, 288 (1997) ("The 'discovery rule' serves to toll the statute of limitations during the 'plaintiff's complete inability, due to facts and circumstances not within his control, to discover an injury despite the exercise of due diligence'").

#### b. The Continuing Violation Doctrine

Southersby also argues that because the Borough's conduct was part of a continuing practice, the continuing violation doctrine applies rendering all of its claims timely. Again, the Court disagrees.

Under the continuing violation doctrine, "when a defendant's conduct is part of a continuing practice, an action is timely so long as the last act evidencing the continuing practice falls within the limitations period; in such an instance, the court will grant relief for the earlier related acts that would otherwise be time barred." Brenner v. Local 514, United Bhd. of Carpenters & Joiners of Am., 927 F.2d 1283, 1295 (3d Cir. 1991). The plaintiff, however, must establish that the harassment at issue is "'more than the occurrence of isolated or sporadic acts of intentional discrimination.'" West v. Philadelphia Elec. Co., 45 F.3d 744, 755 (3d Cir. 1995), quoting Jewett v. Int'l Tel. and Tel. Corp., 653 F.2d 89, 91 (3d Cir. 1981). That is, the doctrine only applies when the alleged discriminatory acts are not individually actionable, but when aggregated make out a cause of action such as a hostile work environment claim.[2] See O'Connor v. City of Newark, 440 F.3d 125, 127 (3d Cir. 2006) ("*Morgan* established a bright-line distinction between discrete acts, which are individually actionable, and acts which are not individually actionable but may be aggregated to make out a hostile work environment claim. The former must be raised within the applicable limitation period. . . ."). Indeed, as found by the

---

[2] It should be noted here that virtually all of the cases in which the continuing violation theory has been applied are employment discrimination suits based on a hostile work environment as the very nature of a hostile work environment involves repeated conduct or incidents that occur over time. Because it is the cumulative effect that renders the work environment unreasonable, the unlawful practice cannot be said to occur on any particular day. Although the Court of Appeals for the Third Circuit has recognized that the continuing violation theory could apply in non-employment civil rights actions, it has actually found it applicable in only a few other cases. See Major Tours, Inc. v. Colorel, 799 F. Supp. 2d 376, 387-88 (D.N.J. 2011). Nevertheless, as found by the District Court of New Jersey, "[t]o the extent that the doctrine applies beyond the employment context, it is clearly confined to the

United States Supreme Court,

> discrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges. Each discrete discriminatory act starts a new clock for filing charges alleging that act.
>
> \*     \*     \*
>
> Discrete acts such as termination, failure to promote denial of transfer, or refusal to hire are easy to identify. Each incident of discrimination and each retaliatory adverse employment decision constitutes a separate actionable "unlawful employment practice."

Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 113-14 (2002). See Major Tours, Inc. v. Colorel, 799 F. Supp. 2d 376, 387-88 (D.N.J. 2011) ("[t]he continuing violation doctrine is a doctrine based on the accrual of claims which are an aggregate of wrongs, no single one of which would give rise to a discrete claim"). Thus, "discrete discriminatory acts that are actionable on their own may not be aggregated under a continuing violation theory." McCann v. Astrue, 293 Fed. Appx. 848, 850 (3d Cir. 2008).

Here, although Southersby has alleged in paragraphs 23 a, b, c, d, e, h, i and j of the Second Amended Complaint that the Borough discriminated against it in a variety of ways over a period of several years, each instance of alleged discrimination was actionable at the time it occurred; the events did not need to accrue before Southersby had a cause of action. Southersby's claims, for instance, that it was discriminated against in June of 2004 and July of 2005, when the Borough required it to use limestone in the construction of its base roadways instead of slag, and to develop a grouting plan when other developers were not required to do so, were each discrete acts of discrimination giving rise to an equal protection claim at that time. Similarly, the Borough's requirements that Southersby conduct density testing and core sampling

---

delayed accrual of a claim based on aggregate wrongs." Id. This is clearly not the case here.

and that it install storm sewers in the front of the building lots when other developers were not required to do so, each gave rise to a distinct claim of discrimination.   Because "the continuing violation theory . . . does not permit the aggregation of discrete discriminatory acts for the purpose of reviving an untimely act of discrimination," the doctrine does not serve to revive Southersby's claims stemming from conduct that occurred prior to September 12, 2006.   Major Tours, Inc., 799 F. Supp. 2d at 388, quoting Roa v. LAFE, 985 A.2d 1225, 1233 (N.J. 2010).

### 2.        The Remaining Equal Protection Claims

The Borough argues that Southersby's remaining equal protection claims are also subject to summary judgment because Southersby is unable to point to evidence from which a fact finder could conclude that the Borough intentionally treated Southersby differently from a similarly situated developer or that the Borough had no rational basis for allegedly treating Southersby differently.

The Equal Protection Clause of the Fourteenth Amendment states that: "[n]o state shall ... deny to any person within its jurisdiction the equal protection of the laws."   U.S. CONST. amend. XIV, § 1.   "[T]he purpose of the equal protection clause of the Fourteenth Amendment is to secure every person within the State's jurisdiction against intentional and arbitrary discrimination, whether occasioned by express terms of a statute or by its improper execution through duly constituted agents."   Village of Willowbrook v. Olech, 528 U.S. 562, 564 (2000) (internal quotations and citations omitted). Thus, the Supreme Court has held that the equal protection clause is "essentially a direction that all persons similarly situated should be treated alike."   City of Cleburne, Tex. v. Cleburne Living Ctr. Inc., 473 U.S. 432, 439 (1985).

Although claims brought pursuant to the equal protection clause typically focus on

government classifications of groups that are treated differently than others, the Supreme Court

has recognized that an individual, or a "class of one," may be entitled to protection if he or she is

being unreasonably singled out.   Engquist v. Oregon Dept. of Agriculture, 553 U.S. 591, 601

(2008), quoting Olech, 528 U.S. at 564.   As the Supreme Court has stated:

> When those who appear similarly situated are nevertheless treated
> differently, the Equal Protection Clause requires at least a rational reason for
> the difference, to assure that all persons subject to legislation or regulation
> are indeed being "treated alike, under like circumstances or conditions."
> Thus, when it appears that an individual is being singled out by the
> government, the specter of arbitrary classifications is fairly raised, and the
> Equal Protection Clause requires a "rational basis for the difference in
> treatment."

Engquist, 553 U.S. at 602, quoting Olech, 528 U.S. at 564.   See Yan v. Penn State University,

2010 WL 3221828 at *5 (M.D. Pa. Aug. 13, 2010) ("A 'class-of-one' claim is predicated on the

notion that a plaintiff was treated differently by the government, not based on membership in a

protected class, but simply arbitrarily").

The United States Court of Appeals for the Third Circuit therefore has found that to

succeed on an equal protection claim under a "class of one" theory, the plaintiff must

demonstrate that (1) the defendant treated him differently from others similarly situated, (2) the

defendant did so intentionally, and (3) there was no rational basis for the difference in treatment.

Hill v. Borough of Kutztown, 455 F.3d 225, 239 (3d Cir. 2006).   To be "similarly situated,"

parties must be "alike in all relevant aspects."   Startzell v. City of Philadelphia, 533 F.3d 183,

203 (3d Cir. 2008) (internal quotation marks omitted).

Citing to ABD Monroe, Inc. v. Monroe Twp., 2008 WL 58876 (D.N.J. Jan. 3, 2008), the

Borough argues that in order to show that other developers are similarly situated, Southersby is

obligated to produce evidence that they are "prima facie identical in all relevant respects." Presuming that the relevant comparators include the size of the developments, including the number of lots, the topography, the infrastructure required and whether there are existing access roads, the Borough concludes that Southersby is unable to meet its burden. As pointed out by Southersby, however, the law in the Third Circuit does not require it to show that the other developers are *identical* in all relevant respects but only that they are *alike*. Startzell, 533 F.3d at 203. See Montanye v. Wissahickon School Dist., 327 F. Supp. 2d 510, 519 (E.D. Pa. 2004), citing Village of Willowbrook, 528 U.S. at 565 ("plaintiff need not allege she was treated differently than others identically situated but rather that she was treated differently from others similarly situated"). As such, the Borough's reliance on an unpublished opinion which, in turn, relies on an opinion from the United States Court of Appeals for the Seventh Circuit, is unpersuasive. See ABD Monroe, Inc. v. Monroe Twp., 2008 WL 58876 at *9, citing Purze v. Village of Winthrop Harbor, 286 F.3d 452, 455 (7th Cir. 2002).

Moreover, although the Borough argues that the relevant comparators should include size of the developments, the topography, the infrastructure required and whether there are existing access roads, it does not cite to any authority to support its assertion and has not pointed to any evidence showing that the citied developments are dissimilar in these respects. Nor has the Borough provided any support for its proposition that Borough ordinances vary depending on the number of residents within a development, an assertion that Southersby disputes.

Southersby, on the other hand, argues that the developments at issue are sufficiently alike in that they are all within the same geographical proximity to one another; they were all in development at the same time; they all required the same infrastructure improvements; they were

all subject to the same Borough ordinances regulating land development; and they were all overseen or regulated by Gateway Engineers and Defendant McVicker. To support its position, Southersby has submitted an Affidavit from Ann Murphy, Southersby's Secretary, to which is attached a map of the area identifying the location of each of the developments, and a series of letters from Gateway Engineers setting forth the estimated construction costs and bonding information for each of the developments at issue. ECF No. 127-1, ¶ 55; 127-5, pp. 35-45; 127-6, pp. 1-16. These exhibits not only demonstrate that the developments were being developed at approximately the same time in the same geographical location but that they were all being overseen by Gateway. Moreover, they all required largely the same infrastructure improvements including storm sewers, sanitary sewers, grading, E&S Control and Bituminous Paving. Under these circumstances, the Court finds that these developments and Patriot Pointe are sufficiently alike to allow a jury to find they are similarly situated for purposes of an equal protection analysis. See MFS, Inc. v. DiLazaro, 771 F. Supp. 2d 382, 445-46 (E.D. Pa. 2011) (finding that although the various entities at issue are distinct from the plaintiff's mineral wool facility in certain ways, two of the facilities were similarly situated for purposes of the equal protection clause as they also emitted hydrogen sulfide and were regulated by the PaDEP). See also Holt Cargo Sys., Inc. v. Delaware River Port Auth., 20 F. Supp. 2d 803, 826 (E.D. Pa.1998), aff'd, 165 F.3d 242 (1999) ("any two entities will look sufficiently dissimilar if examined at a microscopic level").

The Court also finds that there is sufficient evidence of record from which a jury could conclude that the Borough treated Southersby differently than the other cited developers. Southersby has presented evidence that Chamberlain Ridge and Scenery Hill were not required to

undergo density testing or core sampling during road installation and that, despite the fact that their roads were not built to Borough standards, it was recommended by Gateway that both developments be accepted by the Borough for public use. ECF No. 127-1 ¶ 6; 127-2, pp. 29-31. Southersby has also submitted inspection reports and bills from Gateway Engineers for Patriot Pointe Phase II, Scenery Hill, Castor Farms and Chamberlain Ridge which show the disparity in the number of the inspections and the costs associated with those inspections that Southersby was required to endure as compared to the relatively few routine inspections imposed upon the other developers. ECF Nos. 128-1, p. 1 to 128-6, p. 10; 128-7, pp. 25-27. As well, it appears that Southersby alone was required to submit a grouting plan and that McVicker submitted a sewer plan exemption to the DEP for Hunters Field and Mill School while Southersby's request for an exemption to Ordinance No. 685, so that it could install a sanitary sewer system using grinder pumps and a force main line, was denied. ECF Nos. 127-1, ¶ 42; ECF 127-4, pp. 29-39; 127-9, ¶ 14; 130-2.

There also appears to be material issue of fact surrounding Southersby's claim that it was treated differently than the developers of Castor Farms relative to earth moving activities. Specifically, Southersby has alleged that the Borough engineer, Joe Sites, filed an unsubstantiated complaint with the ACCD in May of 2009 alleging that Southersby was "working in a stream channel" without a permit but that no such complaint was filed against the developers of Castor Farms in 2007 after it was learned that they had engaged in earth moving activities without a permit. ECF No. 60, ¶ 23o.

In this regard, the Borough contends that Castor Farms not only had a "surface mining permit" that allowed it to engage in earth moving activities but that Castor Farms was

nevertheless under the jurisdiction of the DEP, which controlled the permit process and precluded the Borough from regulating the developer's actions. ECF No. 100-2, ¶¶ 9, 10. Once the Borough was informed by ACCD in November of 2007 that Castor Farms needed a NPDES Permit to move earth and that the Borough may have violated state law if it had issued a Building Permit without the NPDES Permit, the Borough claims it received permission from ACCD to issue two Building Permits while the NPDES was obtained. Id. at ¶ 10. With respect to Southersby, the Borough contends that Gateway learned in May of 2009 that Southersby had violated the terms of its building permit by "filling a stream channel" that was not shown on its permit. Id. at ¶ 11. Consequently, according to the Borough, Joe Sites merely inquired whether Southersby had submitted an amendment to the grading permit to include the stream channel which then caused the ACCD to conduct an inspection. Id. The Borough notes that while Southersby was not permitted to engage in additional grading no enforcement action was taken against it. Id.

Southersby, however, contends that the DEP permit originally issued to Castor Farms was only for surface or strip mining and did not permit earth moving activities; nor did it preclude the Borough from regulating the actions of the Castor Farms' developers. ECF No. 129-2, p. 25. Moreover, Southersby has submitted evidence that the Borough actually issued four building permits to Castor Farms before it had obtained the NPDES Permit, rather than the two it claims it had permission to issue. ECF No. 129-5, pp. 8-20. Southersby also maintains, contrary to the Borough's assertion, that it had the requisite permits to work in the stream channel at the time Joe Sites contacted the ACCD. ECF Nos. 127-1, p. 6, ¶ 16; 129-1, pp. 4-7; 130-1, p. 21.

This evidence, in the Court's view, is sufficient to create an issue of fact for trial as it is

unclear from the record not only whether Castor Farms' DEP Permit allowed it to engage in earth moving activities but whether the DEP's involvement precluded the Borough from regulating the Castor Farms development. Moreover, it appears that the Borough issued four building permits to Castor Farms, and not just the two it had permission to issue before Castor Farms had received the requisite NPDES, permit and that Southersby's NPDES Permit allowed it to work in the stream channel when Joe Sites reported to the ACCD that it did not. Under these circumstances, a reasonable fact finder could conclude that the Borough treated Southersby less favorably than it did the developers of Castor Farms. As such, the Borough's Motion for Partial Summary Judgment as it pertains to actions allegedly taken by the Borough after September of 2006, is denied.[3]

### 3. First Amendment Restraint of Speech Claim

Finally, the Borough argues that Southersby is unable to sustain its restraint of speech claim under the First Amendment. Specifically, the Borough contends that the Council Meeting held on January 10, 2011 ("the Meeting"), at which Matthew Horton, Southersby's Engineer, and Timothy Murphy, Southersby's President, were precluded from speaking, was a limited public forum which permits the Borough to impose certain regulations provided they are content-neutral and designed to further the purpose for which the forum was created. Because the evidence demonstrates that Messrs. Horton and Murphy failed to comply with the content-neutral rules and regulations that were adopted by the Borough to ensure that the meetings proceed in an orderly and efficient manner, the Borough contends that it is entitled to summary judgment.

---

[3] Although the Borough states generally that Southersby is also unable to show that there is no rational basis for the alleged difference in treatment, it has not included any argument or discussion on the issue in its brief. As such, it does not appear that the third prong of the "class of one" analysis is at issue.

It appears undisputed that when a First Amendment free speech claim revolves around restriction of speech on government controlled property, the classification of the forum dictates the parameters of the First Amendment rights.   Galena v. Leone, 638 F.3d 186, 197 (3d Cir. 2011), citing U.S. v. Marcavage, 609 F.3d 264, 274 (3d Cir. 2010) ("[t]he degree of First Amendment protection a speaker enjoys depends on the type of forum in which the expressive activity occurred").   It is also undisputed that the type of forum at issue here is a limited public forum as the Meeting was held for the limited purpose of governing Jefferson Hills and discussing topics related to that governance.[4]   Id.   See Donovan ex rel. Donovan v. Punxsutawney Area Sch. Bd., 336 F.3d 211, 225 (3d Cir. 2003) (a limited public forum is one "that is limited to use by certain groups or dedicated solely to the discussion of certain subjects").   See also Eichenlaub v. Township of Indiana, 385 F.3d 274, 281 (3d Cir. 2004) (finding that the Indiana Township Board of Supervisors meeting was a limited public forum because "public bodies may confine their meetings to specified subject matter . . . matters presented at a citizen's forum may be limited to issues germane to town government") (citations and internal quotation marks omitted).   In limited public forums, to avoid infringing on First Amendment rights, the governmental regulation of speech need be only viewpoint-neutral and "reasonable in light of the purpose served by the forum[.]"   Galena v. Leone, 638 F.3d at 198, quoting Good News Club v. Milford Cent. Sch., 533 U.S. 98, 107 (2001) (citation and internal quotation marks omitted). See Rosenberger v. Rector and Visitors of University of Va., 515 U.S. 819, 829 (1995) (the

---

[4]  The other two categories of public forums are the traditional public forum and the designated public forum.   "Traditional public forums include public streets, parks, and other public areas traditionally devoted to assembly and debate whereas a government entity creates a designated public forum when it intentionally designates property that traditionally has not been regarded as a public forum for use as a public forum."   Galena, 638 F.3d at 197-98 (internal citations omitted).

government may not regulat[e] speech when the specific motivating ideology or the opinion or the perspective of the speaker is the rationale for the restriction").

Here, the Borough asserts that under the Pennsylvania Sunshine Act, 65 Pa. C.S. § 710, it is permitted to adopt "rules and regulations necessary for the conduct of the meetings and the maintenance of order," and that "[a]s part of the Borough's procedures, citizens who wish to speak at either the agenda or regular meetings are required to complete a 'Citizen Request Form' which is turned into the Borough Secretary before the meeting."  EFF No. 102, p. 21.  Relying on an Affidavit submitted by James Weber, the Vice President of Council who presided over the Meeting, the Borough further asserts that citizens will be permitted to speak when their agenda topic is before Council if they request permission to do so prior to the voting portion of the meeting and are recognized by Council.  The Borough argues that because neither Mr. Horton nor Mr. Murphy completed a "request to speak" form or asked to be recognized by Council they failed to comply with Council's procedures and that it was merely following standard procedures when it refused to allow them to speak.  Moreover, the Borough contends that Mr. Murphy was disruptive at the Meeting and was removed purely to maintain order and not because of the content of anything Mr. Murphy wanted to say.

Southersby, however, has submitted affidavits from Ann Murphy and Tim Murphy attesting to the fact that they, as well as Mr. Horton, have spoken numerous times at Council meetings without having submitted a Citizen Request Form or ever having been informed of such a practice.  ECF Nos. 127-1 p. 12, ¶ 53; 127-9, pp. 2-3, ¶¶ 2, 3.  In addition, Mr. Murphy contends that he has spoken numerous times at Council meetings without having been specifically recognized to speak.  ECF No. 127-9, p. 3, ¶ 5.  Moreover, although the Borough

19

invokes the Pennsylvania Sunshine Act, which permits it to adopt rules and regulations necessary to conduct meetings and maintain order, and Mr. Weber has attested to the fact that since he was sworn into office in 2008, the Borough has followed "standard procedures," including requiring citizens wishing to speak at either the agenda or regular meetings to fill out a Citizen Request Form, it has not pointed to any rules or regulations or other evidence to establish the source of the procedures or that the rules and regulations invoked at the Meeting were ever "adopted." Further, although the Borough argues that a citizen who has filled out a request form and has been recognized by Council may speak at agenda and regular meetings when their agenda topic is before Council, it does not appear from the minutes of the Meeting that an opportunity for citizen comment was provided on any topic but the dissolution of the K-9 Unit. Review of the minutes from the Meeting shows that the first item on the agenda was the K-9 program and that 16 different residents were given the opportunity to speak on that issue. When the other "Agenda Items" came up, however, there appears to have been no opportunity for public comment. ECF No. 129-4, pp. 7-10. While the Borough may suggest that no opportunity was provided because no Citizen Request Form was submitted, given the Murphys' statements that they had previously spoken at Council meetings without submitting a request to do so, there appears to be a question of material fact regarding the speaking requirements and whether they are consistently enforced. As such, the Borough's Motion for Summary Judgment is properly denied with respect to Southersby's First Amendment restrain of speech claim brought at Count III of the Complaint.

**B.      Defendant McVicker's Motion for Summary Judgment**

      **1.      Equal Protection**

          **a.      Generally**

As previously discussed, the only claim that Southersby has brought against Defendant McVicker is that McVicker violated its rights to equal protection.   Although McVicker is specifically named in only three of the itemized instances of discriminatory conduct set forth in the Second Amended Complaint, ECF 60, ¶¶ 23 b, j, k, Southersby has also made allegations against both Defendants (the Borough and McVicker) in paragraphs 23 a, c, d, e, f, g, h.   Thus, the claims brought against McVicker are as follows: McVicker subjected Southersby to unreasonably stringent inspections and required it to pay for engineering activities during Phases I and II including using limestone in the construction of its base roadways rather than slag [ECF No. 60, ¶ 23a]; McVicker subjected Southersby to unreasonably stringent inspections and charged excessive fees [ECF No. 60, ¶¶ 23b, e]; McVicker required Southersby to conduct and pay for density testing and core sampling during road installation of Phases I and II [ECF No. 60, ¶ 23c]; McVicker required Southersby to install storm sewers in the front of the building at an unreasonable depth [ECF No. 60, ¶ 23d]; McVicker demanded that Southersby go through the process of dedicating the Independence Drive connection a second time [ECF No. 60, ¶ 23f]; McVicker attempted to arbitrarily revoke a sign permit issued to Southersby for placement of a monument at the entrance of an access road to Patriot Pointe Phase II [ECF No. 60, ¶ 23g]; McVicker attempted to unlawfully draw on the funds of Southersby's bond for completion of Independence Drive [ECF No. 60, ¶ 23h]; McVicker wrongfully interfered with Southersby's business and contractual relationship with NVR, Inc. (d/b/a Ryan Homes) by threatening to

withdraw, not issue or delay the issuance of building permits and/or issue stop work orders [ECF No. 60, ¶ 23j]; and that McVicker made frivolous complaints against Southersby to the ACCD causing Southersby to undergo unnecessary inspections [ECF No. 60, ¶ 23k]. Southersby contends that no such actions were not taken against other similarly situated developers and that McVicker was motivated by the fact that he had personal or business relationships with other land developers and Borough residents who opposed or stood to benefit from the failure of Patriot Pointe. ECF No. 60, ¶¶ 25-29.

In his motion, McVicker initially contends that he is entitled to summary judgment because Southersby is unable to point to any evidence from which a fact finder could conclude that it was similarly situated to other developers or that McVicker's actions were wholly arbitrary or without a rational basis. Alternatively, McVicker argues that to the extent Southersby's equal protection claims are based on conduct occurring before September 12, 2006, they are barred by the statute of limitations and that he is nevertheless entitled to qualified immunity.

The Court has already found that, to the extent they are based on conduct that occurred before September 12, 2006, Southersby's claims brought at paragraphs 23 a, b, c, d, e, h and j of the Second Amended Complaint are barred by the statute of limitations. Thus, insofar as McVicker's conduct relative to these claims occurred prior to September 12, 2006, his Motion is granted as well.

In addition, the Court has already found that the other cited developments and Patriot Pointe are sufficiently alike to allow a jury to find they are similarly situated for purposes of an equal protection analysis. McVicker nevertheless argues that the record is devoid of any evidence that he demanded that Southersby go through the process of dedicating the

Independence Drive connection a second time [ECF No. 60, ¶ 23f]; that he arbitrarily revoked a sign permit issued to Southersby for placement of a monument at the entrance of the Independence Drive connector [ECF No. 60, ¶ 23g]; or that he made frivolous complaints against Southersby to the ACCD [ECF No. 60, ¶ 23k].

### b. The Dedication of Independence Drive [Paragraph 23f]

With respect to the Independence Drive connector, the evidence shows that early in December of 2007, Ann Murphy discovered that the Borough was not salting the Independence Drive connector and reported the hazardous condition to the police, who informed her that, as per McVicker, the roadway was not public and would not be maintained by the Borough. ECF No. 127-1, ¶ 29. Mrs. Murphy subsequently contacted John Shepherd, the Borough Manager at the time, who indicated in an e-mail dated December 6, 2007, that "after conducting research" the Borough determined that the Independence Drive Connector had been dedicated to and accepted by the Borough and that it would be maintained in the future. ECF Nos. 127-1, ¶ 30; 127-3, p. 35. However, on February 18, 2008, Mr. Murphy received a letter from Mr. Shepherd stating that: "[a]fter a review of Borough records, it has been determined that a segment of Independence drive has not been formally accepted by the Borough" and that it is the Borough's understanding Southersby does not own the property in question but rather has an easement from the property owner, Al Betler. ECF Nos. 127-1, ¶ 32; 124-4, p. 5. In response to another inquiry by Southersby's counsel, Mr. Shepherd sent e-mail dated February 21, 2008, in which he states that he understands counsel's concerns and that:

> because of this misunderstanding, the Borough will not be ceasing winter maintenance until we get this issue resolved. However, a more detailed review of the ordinance which accepted various roads in Patriot Pointe

indicates that the segment between Gill Hall Road and the Phase II border was not included in the ordinance for acceptance. However, during my discussions with various Borough officials, I believe it was the intent of the Borough to accept all of Independence Drive, including the segment that was not accepted. I am not certain as to why the segment of Independence Drive in question was not included in the aforementioned ordinance. At this Point, we recommend that Southersby formally request for dedication the segment of Independence Drive between Gill Hall Road and Phase 2 Patriot Pointe.

ECF Nos. 127-1, ¶ 34; 127-4, p. 10.

For his part, McVicker recalled instructing the road department's employees to plow only public roads and that at some point he became aware that there was a question of whether the portion of Independence Drive that crossed the property of Albert Betler's properly was a public road or whether it was Betler's private property. ECF No. 99-10, p. 5, ¶ 7. McVicker testified at his deposition that the "Borough Manager and someone in the Borough" told him not to salt Independence Drive because it was not yet a public road. ECF No. 99-2, pp. 42-43. McVicker also acknowledged the existence of a daily log from the Jefferson Hills Police Department registering a phone call from Ann Murphy asking the Borough to salt Independence Drive, and the fact that she faxed a copy of the ordinance that was passed requiring the Borough to maintain the road. The log indicates that, after receiving the fax, Sergeant Pot spoke to McVicker who maintained that Independence Drive was not the Borough's responsibility. Id. at pp. 44-45. Although McVicker could not recall how the decision was made to begin salting Independence Drive again or who informed him to do so, he testified that "[s]omebody informed [him] to do it" and "[he] did it." Id. at p. 46.

This evidence, in the Court's view is not sufficient to permit a reasonable juror to conclude the McVicker either intentionally treated Southersby differently from other similarly

situated developers or that he had no rational basis for doing so.   Indeed, the evidence suggests only that after a dispute arose regarding whether the portion of Independence Drive at issue had, in fact, been part of the ordinance for acceptance, McVicker was told not to plow or salt it because it was not yet a public road and that and some point thereafter he was told to begin maintaining it again.   Moreover, Southersby has not pointed to any evidence to suggest that it was McVicker's decision not to plow the connector or that the decision not to plow it was irrational given the uncertainty regarding whether the Independence Drive Connecter was a public or private roadway.   Although Southersby makes much of Mr. Shepherd's statement that the Borough intended to accept all of Independence Drive, it does not argue that all of it was, in fact, accepted in the original ordinance or pointed to any evidence that the Borough or McVicker was mistaken in this regard.   Under these circumstances, McVicker is entitled to summary judgment on this claim.

### c.        The Sign Permit [Paragraph 23g]

Southersby has also brought a claim against McVicker regarding his part in the revocation of a sign permit issued to Southersby allowing it to place a monument at the entrance of Patriot Pointe.   In this regard, McVicker has presented his deposition testimony at which he was asked whether he recalled issuing the "permit to Southersby for the installation and construction of the sign or monument that Belter was complaining about."   ECF No. 99-2, p. 46.   Responding that he did, he also acknowledged that, after the monument was constructed, he issued a letter indicating that it had been brought to the Borough's attention that the "sign has been installed on private property, not within the public right of way as specified on the sign permit application," and revoking the sign permit.   ECF No. 99-12, p. 1.   In addition, McVicker

directed Southersby to remove the monument or face certain liabilities. ECF Nos. 99-12, pp. 1-2; 99-2, pp. 46-48. McVicker has also presented evidence that he was instructed by Borough Council to revoke the sign permit because the monument was placed on private property. ECF No. 99-10, p. 7, ¶9.

Southersby offers no additional evidence to what McVicker has pointed to other than its permit application, which was signed by McVicker, ECF No. 127-2, pp. 9-16, and to point out that the revocation letter was issued the day after Mr. Shepherd sent the letter informing Southersby that the Independence Drive connector had, in fact, not been accepted by the Borough. ECF No. 127-1, ¶¶ 32-33. Southersby does not discuss the significance of the latter nor does it provide any evidence that would call into question McVicker's evidence that he was instructed by Borough Counsel to revoke the permit for the monument because it had been placed on private property and not on public property as the application indicates.[5] ECF No. 127-2, p. 13. Indeed, Southersby does not argue that the monument was, in fact, constructed on public property rather than on Mr. Betler's property and appears to acknowledge that Mr. Betler complained about the placement of the sign. EFC No. 99-2, p. 46. As such, McVicker is entitled to summary judgment on this issue as well.

### d. ACCD Complaints [Paragraph 23k]

McVicker argues that it is entitled to summary judgment on Southersby's claim that he made frivolous claims to the ACCD causing it to undergo unnecessary inspections. In so arguing, McVicker focuses on a single complaint made in April of 2008, and asserts that because

---

[5] Moreover, although, Southersby has alleged in the Second Amended Complaint that no action was taken against other developers, including the Jefferson Estate developers, who had placed an entrance sign in a similar right of way, ECF No. 60, ¶ 23k, Southersby has not discussed these allegations at all or pointed to any evidence surrounding

Southersby is only able to speculate that the complaint was made by McVicker, the claim is properly dismissed.   Indeed, it appears that Ann Murphy testified at her deposition that when she called Donna Simmons at the ACCD regarding a complaint that was made in April of 2008, Ms. Simmons told her that she was not at liberty to tell Murphy who made the complaints.   When Murphy allowed that McVicker was the only person she knows of that would call and make a complaint like this, Simmons purportedly responded by asking, "What is his title anyway?" ECF No. 99-5, pp. 164-66.   Murphy contends that Simmons response was her way of telling Murphy that it was McVicker who called.   Id. at p. 166.

Although Murphy's testimony relative to what Simmons may or may not have been trying to tell her with respect to the source of the April 2008 complaint may be based on speculation, neither McVicker's argument, nor the evidence he has presented, speak to the myriad of other complaints that Southersby claims were made against it that were not made against other developers.   In this regard, Anne Murphy has testified that she reviewed the Borough's files and that of Gateway Engineers regarding the various developments at issue to see who else was being subjected to complaints or, as she put it, being "beat up with that bat."   ECF No. 128-7. pp. 24-25, 27.   While she couldn't state that there were no complaints brought against other developers, she was "hard pressed" to find one.   ECF No. 128-7, p. 26.   Because these other complaints made against Southersby have not been addressed by the parties, it cannot be said at this juncture that McVicker did not make frivolous complaints against Southersby to the ACCD. As such, there appears to be material issues of fact for trial and McVicker's Motion is denied as to this issue.

the other signs.

## 2.    Qualified Immunity

McVicker alternatively argues that summary judgment should be granted in his favor because he is entitled to qualified immunity.

> "The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 129 S.Ct. 808, 815, 172 L.Ed.2d 565 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982)). There are two related but distinct inquiries in a qualified immunity case. One is whether the defendant's conduct violated the plaintiff's civil rights; the other is whether the right in question was clearly established at the time of the violation.

Schneyder v. Smith, 653 F.3d 313, 318 (3d Cir. 2011).   Having already found that, at the very least, there is a question of fact concerning whether McVicker's actions violated Southersby's right to equal protection, the question becomes whether the particular right at issue was clearly established at the time.

"Ordinarily a constitutional duty is not clearly established simply because of the existence of a broad imperative like the one against "unreasonable ... seizures," or equal protection.   Id. at 329, quoting Anderson v. Creighton, 483 U.S. 635, 639 (1987).   Rather, to be clearly established, "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." Id., quoting Anderson at 640.   "The ultimate question . . . is whether the defendant had "'fair warning" that his conduct deprived his victim of a constitutional right.'"   Id., quoting Hope v. Pelzer, 536 U.S. 730, 740 (2002).

Here, the wrongfulness of McVicker's actions appears to be self-evident.   It should have been clear to any reasonable official, particularly one who has worked within the Borough for over forty years and as the Public Service Coordinator since 2000, that making frivolous

complaints against a developer to the ACCD so as to cause it to incur unnecessary inspections were violative of Southersby's right to equal protection.[6]    Accordingly, McVicker is not entitled to qualified immunity.

### 3.    Punitive Damages

Finally, McVicker argues that Southersby claim against him for punitive damages must be dismissed.

Punitive damages may be awarded against a state actor sued in his individual capacity. Smith v. Wade, 461 U.S. 30, 56 (1983).   The party seeking punitive damages, however, must show that the defendant's conduct was motivated by an evil motive or intent, or that the conduct involved reckless and callous indifference to the plaintiff's federally protected rights.   Id. "Reckless indifference refers to a defendant's knowledge that he may be acting in violation of federal law."   Wooleyhan v. Cape Henlopen School Dist., 2011 WL 1875710 at *26 (D. Del. May 17, 2011), citing Alexander v. Riga, 208 F.3d 419, 431 (3d Cir. 2000).   Moreover, whether or not the plaintiff is entitled to punitive damages is a typically a question of fact for the jury to resolve.   Malone v. Econ. Borough Mun. Auth., 669 F. Supp. 2d 582, 612 (W.D. Pa. 2009).

In the instant case, having found that it would be clear to any reasonable official that McVicker's conduct was violative of Southersby's right to equal protection, it follows that a fact finder could reasonably find that McVicker acted with reckless indifference to Southersby

---

[6] In addition, Southersby's claims brought against McVicker at paragraphs 23 a, b, c, d, e, h, and j of the second Amended Complaint are still viable to the extent they revolve around conduct that occurred after September 12, 2006.   Although not addressed by the parties, it would appear clear that to a reasonable official that selectively applying Borough road specifications; subjecting Southersby to unreasonable stringent inspections; requiring Southersby to pay for engineering activities and conduct density testing and core sampling; requiring it to install storm sewers in the front of buildings; and charging excessive fees for various changes to the infrastructure, when other developers were not subject to the same treatment, would also be violative of Southersby's right to equal protection.

federally protected rights.     Accordingly, the Court declines to grant McVicker's motion in this regard, finding it more appropriate to allow the jury to decide whether punitive damages are warranted.

**IV.      CONCLUSION**

For the these reasons, the Motion for Summary Judgment submitted by Defendant McVicker, ECF No. 96, will be granted in part and denied in part, the Motion for Partial Summary Judgment submitted by the Borough, ECF No. 101, will be granted in part and denied in part.

/s/ Maureen P. Kelly_____
United States Magistrate Judge

Dated: 14 February, 2012

cc:      Counsel of Record via CM-ECF